IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PEDRO J. ROSSELLÓ GONZÁLEZ, et al.,

Plaintiffs

v.

SILA M. CALDERÓN SERRA, et al.,

Defendants

CIVIL 04-2251 (DRD)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  INTRODUCTION

On January 21, 2005, co-defendants the State Elections Commission (hereinafter "SEC") and its president Aurelio Gracia (hereinafter "Gracia") filed a motion titled "Petition for an Award of Attorney's Fees."  (Docket No. 215.) Similarly, on January 22, 2005, co-defendants Gerardo Cruz (hereinafter "Cruz") and Aníbal Acevedo Vilá (hereinafter "Acevedo") filed an "Application for Attorney[']s Fees and Costs" against the plaintiffs. (Docket No. 216.) Both requests are primarily based on co-defendants' argument that plaintiffs' complaint was frivolous.  The plaintiffs, Pedro Rosselló González (hereinafter "Rosselló"), Luis Fortuño, Miriam Ramírez, Nanette Guevara, Arnold Gil-Caraballo, Larry Seilhamer, José Sánchez, Juan F. Ramírez and Javier Rodríguez-Horta (collectively "the plaintiffs") filed a response in opposition to above co-defendants' petitions for attorney's fees.  (Docket No. 223, February 23, 2005.)  The SEC filed a reply to plaintiffs' opposition on June 10, 2005.  (Docket No. 237.)

CIVIL 04-2251 (DRD)                    2

Also before the court is plaintiffs' own "Motion for Attorney's Fees" filed on January 24, 2005. (Docket Nos. 217 and 218.) Said motion was opposed by co-defendant Sila M. Calderón-Serra (hereinafter "Calderón") and the Incoming Government Transition Committee (hereinafter "the Committee") on January 27, 2005 (Docket No. 220) and by the SEC and Gracia on February 10, 2005. (Docket No. 227.) The plaintiffs filed their respective replies to both oppositions on June 6, 2005. (Docket Nos. 235 and 236.) Finally, the court is also considering the motion to strike filed by co-defendants Cruz and Acevedo. (Docket No. 221.) Plaintiffs opposed co-defendants' motion to strike on February 14, 2005. (Docket No. 228.)

These matters were all referred to me for report and recommendation on June 6, 2005. (Docket No. 234.) See Fed. R. Civ. P. 54(d)(2)(D). The following is a synopsis of the factual background and procedural history of the case.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Puerto Rico's general elections were held on November 2, 2004. Three separate ballots were used in this election. One included the candidates for Governor and Resident Commissioner, another ballot was used for the candidates to the Legislative Assembly and a third ballot was used to elect the Municipal Government of the different municipalities in Puerto Rico. Specifically, the ballot that was to be cast for the offices of Governor and Resident Commissioner listed the

---

[1]The following recitation of the factual and procedural background is taken mostly from the First Circuit's opinion in Rosselló-González v. Calderón-Serra, 398 F.3d 1 (1st Cir. 2004).

CIVIL 04-2251 (DRD)                    3

candidates for those two offices under the insignia of the political party represented by said candidates.  For instance, co-plaintiffs Rosselló and Luis Fortuño, who were the New Progressive Party's (hereinafter "NPP") candidates for Governor and Resident Commissioner respectively, were listed under the NPP's insignia.  Co-defendants Acevedo and Roberto L. Prats Palerm were listed under the Popular Democratic Party's (hereinafter "PPD") insignia.  And the candidates for the Puerto Rican Independence Party (hereinafter "PIP"), Rubén Berríos Martínez and Edwin Irizarry Mora, were listed under the PIP's insignia.

The instructions in the Governor and Resident Commissioner ballot directed the voters to vote for only one candidate for Governor and one candidate for Resident Commissioner.  The ballots were filled out in four different ways.  A number of voters placed one mark under a party's insignia (a "straight vote"), thereby voting for all the candidates in that party's column.  Other voters placed a mark next to the names of the desired candidates but not under any party insignia.  Another group of voters made their selection by placing a mark under a party insignia and a mark next to the name of one candidate from a party other than the one that had its insignia previously marked.  Finally, there were voters who placed a mark under a party insignia, and two marks next to the names of candidates representing a different party than the one that had its insignia marked ("three mark split vote").  During the election, thousands of these mark split vote ballots

CIVIL 04-2251 (DRD)                    4

were cast.  The majority of these ballots contained a mark under the PIP's insignia and two marks next to the PDP candidates.

Within 72 hours of the closing of the polls, the SEC preliminary reported that co-defendant Acevedo was leading in the gubernatorial race.  However, Acevedo and Rosselló were separated by a very narrow margin:  3,880 votes.  In view of the closeness of the election, the SEC announced that a recount and a general canvass would be conducted simultaneously.  The next day, the SEC's president changed course and informed that the recount would not begin until after completion of the general canvass.  The general canvass began on November 8, 2004.

Several three mark split vote ballots were adjudicated at the polling centers on election night while others were contested.  During the first two or three days of the general canvass, the contested three mark split vote ballots were determined to be valid.  However, on November 11, 2004, the Electoral Commissioner of the NPP took the position that the three mark split vote ballots were void.  The Electoral Commissioners for the PDP and PIP disagreed with said position and the issue was referred to the SEC's president.  The next day, Gracia issued a written resolution ruling that the three mark split vote ballots contained valid votes for both the individually marked candidates and the marked party.  The plaintiffs had a statutory right to seek review in the Puerto Rico Court of First Instance, 16 P.R. Laws Ann. § 3016a.  They decided not to exercise said right.  In turn, they sought to challenge Gracia's decisions in federal court.

CIVIL 04-2251 (DRD)                    5

On November 10, 2004, the plaintiffs filed a complaint under 42 U.S.C. § 1983 against the SEC; its president Gracia and its three Commissioners; against incumbent Governor Calderón; and against Acevedo and the Committee, asserting a variety of constitutional claims arising out of the November 2, 2004 election.[2] (Docket No. 1.)  The plaintiffs filed an amended complaint on November 12, 2004 to include claims arising out of the SEC's decision to validate and count the three mark split vote ballots and to disregard certain late-filed absentee ballots.  (Docket No. 5.)  They sought declaratory and injunctive relief.  A hearing was scheduled for November 18, 2004.  (Docket No. 6.)[3]

Meanwhile, on November 16, 2004, a group of voters claiming to have cast three mark split vote ballots, filed an action in the Puerto Rico Court of First Instance for San Juan seeking, among other things, a declaration of the validity of their votes.  Said action was dismissed as moot[4] on November 18, 2004.  Thereafter, the Supreme Court of Puerto Rico assumed jurisdiction over the case agreeing to review the Court of First Instance's dismissal.  On the morning of November 20,

---

[2]The main allegation in the original complaint was that the constitutional rights of the plaintiffs were violated by the SEC's failure to conduct a simultaneous recount with the general canvass.  The plaintiffs also challenged co-defendants Calderón, Acevedo and the Committee's decision to proceed with the government's transition process despite the uncertainty as to the result.  Such decision, the plaintiffs claimed, discriminated against Rosselló.

[3]The first of many lengthy hearings.

[4]The Court of First Instance dismissed the case reasoning that there was no actual controversy inasmuch as the SEC had already determined the validity of the ballots at issue.

CIVIL 04-2251 (DRD)                         6

2004, the NPP and its Electoral Commissioner removed the case to this court.  But the plaintiffs in said action and one defendant immediately moved for remand of the case claiming several procedural defects in the notice of removal.[5]

Notwithstanding the removal, the Puerto Rico Supreme Court issued a judgment on the evening of November 20, 2004.  Manuel R. ("Manny") Suárez-Jiménez v. Comisión Estatal de Elecciones, 2004 TSPR 179 (Nov. 20, 2004).  By a vote of four to three, the Supreme Court of Puerto Rico determined that the three mark split vote ballots were valid and that they had to be adjudicated as containing valid votes for the marked candidates for Governor and Resident Commissioner and for the identified party, albeit not for the candidates under the party insignia but for purposes of maintaining principal party status.[6]  Id.

Starting on November 19, 2004, this court issued several orders in connection with the federal action filed by the plaintiffs and the removed state-court action.  On November 19, 2004, this court ordered the SEC to set aside and segregate the three mark split vote ballots and to refrain from announcing the winner of the

---

[5]These parties filed two separate petitions for mandamus in the First Circuit seeking an order from the appellate court directing this court to remand the case to the Puerto Rico Supreme Court.

[6]In accordance with Puerto Rico law, a party is a principal party if for example, it "obtained a number of votes under ... its insignia on the ballot of Governor and Resident Commissioner[] of not less [than] seven (7) percent of the total number of votes cast for all the parties' insignias in the preceding general election...." 16 P.R. Laws Ann. § 3003.  Principal party status is important because it entitles the political party to, among other things, receive funding.  See 16 P.R. Laws Ann. § 3116.

CIVIL 04-2251 (DRD)                    7

gubernatorial race.  (See Docket No. 80, as amended by Docket Nos. 83 and 84.)

Subsequently, on November 23, 2004, this court issued another order in which it

held that the November 20, 2004 judgment issued by the Puerto Rico Supreme Court

was void since the notice of removal had deprived said court of its jurisdiction over

the matter.  (Docket No. 98.)  This court further ordered that a recount be

conducted by counting the three mark split vote ballots, identifying and segregating

the same, but without adjudicating said ballots.  (Docket Nos. 96, 98, 99 and 100.)

The defendants appealed this court's order that the three mark split vote ballots not

be adjudicated.

On December 15, 2004, the First Circuit issued its opinion regarding the

controversies outlined above. Rosselló-González v. Calderón-Serra, 398 F.3d 1 (1st

Cir. 2004).  First, in ruling on the pending petitions for mandamus, the appeals

court held that this court had erred in exercising removal jurisdiction over the state-

court action.  Id. at 10.  Specifically, and after determining the availability of the

writ of mandamus to the particular controversy, the First Circuit explained that

there was no federal jurisdiction over the state action because, procedurally, no

federal question was presented in the four corners of the complaint and,

substantively, because federal courts should not intervene in local electoral

disputes.[7]  Id. The First Circuit ruled that remand to the Puerto Rico Supreme Court

was necessary.  Id.

_____

[7]The panel expanded on this reasoning in the section of the opinion dealing
with the defendants' appeal of the "Non-adjudication Order."

CIVIL 04-2251 (DRD)                    8

With respect to defendants' appeal of the non-adjudication order, the First Circuit began its analysis by determining it had jurisdiction over defendants' appeal to the non-adjudication injunction. Id. at 14-15. The court further observed that inasmuch as plaintiffs' complaint alleged a violation of constitutionally guaranteed rights, it presented a "colorable" claim under 42 U.S.C. § 1983 and this court "could have" exercised jurisdiction in the case. However, the question was whether the court should have intervened. Alluding to the well-established principle that "with only a few narrow and well-delineated exceptions, federal courts are not authorized to meddle in local elections[,]" Bonas v. Town of N. Smithville, 265 F.3d 69, 74 (1st Cir. 2001), the appellate court concluded that this court had abused its discretion when it decided to intervene in the local election dispute presented by plaintiffs' complaint. Rosselló-González v. Calderón Serra, 398 F.3d at 15-16. According to the First Circuit, one of the most important factors that must be considered in evaluating the appropriateness of federal intervention is whether a discrete group of voters has been disenfranchised. Id. at 16 (citing Partido Nuevo Progresista v. Barreto-Pérez, 639 F.2d 825, 828 (1st Cir. 1980)). And because the plaintiff could not show that a discrete group of voters had been disenfranchised, federal intervention was unwarranted. Id. at 16. In explaining its reasoning, the First Circuit stated,

> Here, the final decision under Puerto Rico law to adjudicate all three-mark ballots under one consistent standard does not disenfranchise any Puerto Rico voters -- indeed, it is the position espoused by the Rosselló Plaintiffs

CIVIL 04-2251 (DRD)                    9

> that stands to disenfranchise an estimated 28,000 voters.
> Thus, because the Rosselló Plaintiffs cannot claim that
> federal intervention is necessary because a discrete group
> of voters has been disenfranchised, and because they
> cannot allege any other harm sufficient to overcome the
> general rule of non-intervention, we conclude that it was
> an abuse of discretion for the District Court to intervene in
> this local election dispute.

Id. (footnote omitted).  The appellate panel vacated the injunction issued by this

court and ordered dismissal with prejudice of the claims relating to the adjudication

of the three mark split vote ballot and the simultaneous general canvass/recount

issue.  Id. at 18.  Further, the appeals court ordered dismissal without prejudice of

the absentee ballots claim and the claims under Puerto Rico law.  Id.  On

December 22, 2004, this court entered judgment in accordance with the First

Circuit's instructions and dismissed with prejudice all claims relating to the three

mark ballots[8] and the general canvass/recount issue.  (Docket No. 211.)  The

remaining claims were dismissed without prejudice.  (Id.)

    With this procedural and factual backdrop, I analyze plaintiffs' and

defendants' motions for attorneys' fees separately. But first, I outline the applicable

law.

---

    [8]On December 23, 2004, the Supreme Court of Puerto Rico issued another
opinion once again declaring the validity of the three mark split vote ballots by
reiterating the pronouncements made in its November 20, 2004 judgment.  See
Manuel R. ("Manny") Suárez v. Comisión Estatal de Elecciones, 2004 TSPR 208
(Dec. 23, 2004).

CIVIL 04-2251 (DRD)                    10

## III.  APPLICABLE LAW AND ANALYSIS

Under the so-called American Rule, parties are ordinarily required to bear their own  attorney's fees and the prevailing party is not entitled to collect from the loser.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)).  There are, however, exceptions to the American Rule against fee shifting.  Title 42 U.S.C. § 1988 is one such exception.  Boston's Children First v. City of Boston, 395 F.3d 10, 14 (1st Cir. 2005).  Specifically, section 1988(b) provides that in civil rights actions, including those brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."  42 U.S.C. § 1988(b).

In White v. N.H. Dep't of Employment Sec., 455 U.S. 445, 451-52 (1982) the Court stated that:

> Section 1988 provides for awards of attorney's fees only to a "prevailing party."  Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on  the merits--an inquiry that cannot even commence until one party has "prevailed."  Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements.  Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action.  Their award is uniquely separable from the cause of action to be proved at trial.

CIVIL 04-2251 (DRD)                    11

Id. (citation omitted).   Thus, the first determination the court must make in assessing the appropriateness of an award of attorney's fees, is whether a plaintiff is a prevailing party.  To be a prevailing party, the plaintiff has to succeed on any significant issue in litigation which achieves some of the benefit he sought in bringing the lawsuit in the first place.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  That does not mean that plaintiff has to prevail on every claim and obtain all relief sought—some relief on the merits is enough.  See Richardson v. Miller, 279 F.3d 1, 3 (1ˢᵗ Cir. 2002); see also Tejada-Batista v. Fuentes-Agostini, 263 F. Supp. 2d 321, 326 (D.P.R. 2003).

A petition for attorney's fees of a prevailing defendant, on the other hand, requires a different analysis.  In civil rights cases, "fee-shifting in favor of a prevailing plaintiff is the rule, whereas fee-shifting in favor of a prevailing defendant is the exception."  Bercovitch v. Baldwin Sch., Inc., 191 F.3d 8, 10 (1ˢᵗ Cir. 1999) (citing Casa Marie Hogar Geriátrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1ˢᵗ Cir. 1994)).  In its discretion, a district court may award attorney's fees to a prevailing defendant but only upon a finding that the claim brought against said defendant was frivolous, unreasonable or without foundation even though not brought in bad faith. Christianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978); see also Tang v. R.I., Dep't of Elderly Affairs, 163 F.3d 7, 13 (1ˢᵗ Cir. 1998).  "Prevailing defendants, under this heightened standard, have a more difficult showing to make to obtain attorney's fees than do successful plaintiffs."  Bercovitch v. Baldwin Sch., Inc., 191

CIVIL 04-2251 (DRD)                    12

F.3d at 10.  In determining whether the standard has been met by a prevailing defendant, the court must assess the claim at the time the complaint was filed and avoid the post-hoc reasoning that because plaintiff did not ultimately prevail, the claim must have been frivolous or unfounded.  Tang v. R.I., Dep't of Elderly Affairs, 163 F.3d at 13.

Finally, if a party is found to have prevailed and entitled to recover fees, the court must still make a determination regarding the reasonableness of the award requested.  To calculate a reasonable amount of attorney's fees, the court must determine the hours reasonably expended on the litigation, multiplied by a reasonable hourly rate.  Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001).  Under this lodestar approach, the trial judge is supposed to calculate the time spent by counsel, subtracting duplicative, unproductive and excessive hours, and then apply the prevailing rates in the community taking into account the experience, qualifications and competence of the attorneys involved.  Id. In fashioning the award, the records submitted by the attorneys are usually the starting point, but the court's determination is by no means circumscribed to what the attorneys submit is the time spent or the rate they charge.  Id.  It is the duty of the court "to winnow out excessive hours, time spent tilting at windmills, and the like."  Id. at 296 (citing Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997)).  Finally, it must be kept in mind that the court has considerable discretion in denying an award of attorney's fees to a prevailing defendant, even

CIVIL 04-2251 (DRD)                                    13

after a finding of frivolity. <u>Tang v. R.I., Dep't of Elderly Affairs</u>, 163 F.3d at 15

(holding that the district court retains significant discretion in reducing or denying

an award of attorney's fees after considering all the nuances of the particular case

notwithstanding a finding of frivolity); <u>see also</u> <u>Andrade v. Jamestown Hous. Auth.</u>,

82 F.3d 1179, 1193 (1st Cir. 1996).

     With this standard in mind, I analyze the different motions pending before the

court.

     A.  <u>Co-defendants Acevedo and Cruz' Motion To Strike (Docket No. 221)</u>

     Before entering into the merits of the various requests for attorneys' fees, I

discuss whether the application for fees made by the plaintiffs should be stricken

from the record.  In their motion to strike (Docket No. 221), co-defendants Acevedo

and Cruz advance four arguments in support of their claim that plaintiffs'

application for attorneys' fees must be stricken.   First, they claim that the

application was untimely filed and that there is no showing of good cause excusing

the belated filing. Second, these co-defendants maintain that the application is non-

compliant since it is not accompanied by any documentation or estimate regarding

the fees plaintiffs seek.  Third, it is co-defendants' position that the First Circuit

already awarded costs to the defendants as the prevailing parties in this litigation.

Finally, the co-defendants submit that plaintiffs' request for a hearing violates

federal policy against secondary litigation over fees.

CIVIL 04-2251 (DRD)                          14

Plaintiffs riposte arguing that co-defendants confuse the standard for taxing attorney's fees under 42 U.S.C. § 1988 with the appellate court's standard for assessing costs.  The plaintiffs further submit that in contrast with the rigid appellate framework, the consideration of attorneys' fees under section 1988 depends on multiple factors including a case-by-case determination of the prevailing party question.  Furthermore, the plaintiffs submit that defendants disingenuously repeat the weak procedural objections raised by other co-defendants in the absence of a substantive argument in opposition.  As to the timeliness issue, the plaintiffs submit that co-defendants themselves filed their application one day after the term for doing so had expired.  Finally, with respect to the alleged failure to submit contemporaneous memoranda regarding fee calculations, the plaintiffs maintain that the same responded to their desire not to burden the court with documentation that is unnecessary for the determination of the prevailing party issue.

After reviewing the arguments of the parties, I find that co-defendants' motion to strike should be denied.  While the co-defendants advance four general contentions in support of their motion to strike, three of them require no elaborate discussion.  First, with respect to co-defendants' argument that plaintiffs' application for attorney's fees is non-compliant given the failure to include documentation pertaining to the calculation of fees, I find that such failure should be excused inasmuch as the prevailing party question is the main issue before the

CIVIL 04-2251 (DRD)                        15

court.[9] Second, the present controversy is going to be resolved through memoranda. No hearings will be conducted; therefore, there can be no claim regarding the federal policy against a second major litigation over fees. See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. at 609. Third, co-defendants' contention that the First Circuit awarded appellate costs as the prevailing parties, if anything, goes to the merits of the prevailing party question that will be discussed in detail below and has no bearing in the determination. Finally, with respect to the argument that plaintiffs' application should be stricken as untimely filed, I pause. They request that plaintiffs' fee application be stricken since it was filed outside the term provided in Local Rule 54(a).[10] However, the co-defendants themselves filed their own application outside the prescribed term. Both parties agree that any

_____

[9]In their application, the plaintiffs requested that after finding their entitlement to recover attorney's fees, the court "direct [them] to submit documents proposing a reasonable amount of fees pursuant to the lodestar method." (Docket No. 218, at 13.) In essence, plaintiffs requested that the court first decide their entitlement to the fees and then allow the matter to proceed to a hearing or further briefing as to the amount of the fees to be awarded. While it is true that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance, Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 8 (1st Cir. 1993) (quoting Grendrel's Den, Inc., v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984)), this is not an ironclad rule mandating outright denial of a fee application. Particularly in this case where the plaintiffs recognize their duty to submit contemporaneous time records, but suggest to the court that the prevailing party question be addressed first. In fact, a decision adverse to the plaintiffs on said issue may render unnecessary the filing of time records.

[10]Local Rule 54(a) provides that in cases where a notice of appeal has been filed, "[a]n application for fees ... shall be filed within thirty (30) days of the disposition of the appeal." Local Rule 54(a); cf. Fed. R. Civ. P. 54(d)(2)(B).

CIVIL 04-2251 (DRD)                    16

application for attorney's fees in this case had to be filed no later than January 21, 2005.  Co-defendants' motion was filed on January 22, 2005.  (Docket No. 216.) Plaintiffs' application was filed on January 24, 2005.  (Docket Nos. 217 and 218.) Both sides sought leave to file their untimely applications and attempted to explain the reasons which in their opinions constitute good cause for the belated filings.  It is difficult to understand why co-defendants believe their explanation is somehow better that they can claim with conviction that plaintiffs' belated application should be stricken while theirs should be allowed.  In any event, since the court in its discretion may forgive a party's violation of local rules, see Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004), and because there is no apparent prejudice to any of the parties, the court in this case should, in the interest of justice, excuse both parties' late submissions and proceed to consider their respective applications for fees on the merits.[11]  Accordingly, it is my recommendation that co-defendants' motion to strike be DENIED.[12]

_____

[11]There is another school of thought that espouses the strict compliance with the local rules.  See Souchet v. Hosp. San Cristobal, 208 F. Supp. 2d 149, 151 (D.P.R. 2002); Meléndez v. Merk & Co., 45 F. Supp. 2d 147, 152-53 (D.P.R. 1999); Hogar Club Paraíso, Inc. v. Varela Llavona, 208 F.R.D. 481, 483 (D.P.R. 2002).  In general, both the parties and the court have the right to rely on parties' complying with the clear requirements of the local rules.

[12]Co-defendant Calderón and the Committee filed an opposition to plaintiffs' motion for attorney's fees claiming inter alia that the same should be denied as untimely and given plaintiffs' failure to submit supporting documentation for the calculation of the requested fees.  (Docket No. 221.)  The SEC and Gracia raised similar contentions in its opposition to plaintiffs' motion.  (Docket No. 227.)  Given my finding above that the court should excuse compliance with Local Rule 54(a), these arguments will not be addressed further.

CIVIL 04-2251 (DRD)                    17

    B. Co-defendants' Application for Attorneys' Fees (Docket Nos. 215 and 216)

        1. Frivolity

        Co-defendants the SEC, Gracia, Cruz and Acevedo all move to recover attorneys' fees from the plaintiffs claiming to be prevailing defendants.[13]  As stated above, the co-defendants in this case must make a stronger showing of their entitlement to attorneys' fees.  See Bercovitch v. Baldwin Sch., Inc., 191 F.3d at 10. They must show that plaintiffs' complaint, at the time it was filed, "was frivolous, unreasonable or groundless, [and/]or that the plaintiff continued to litigate after it clearly became so."  Christianburg Garment Co. v. E.E.O.C., 434 U.S. at 422.

        In support of their contention that plaintiffs' complaint was frivolous and groundless, co-defendants argue that the plaintiffs continued to pursue its case in federal court even though they knew federal intervention was unwarranted.  These co-defendants characterize the opinion of the First Circuit as the best evidence that the case was frivolous and unfounded.  According to the co-defendants, the opinion clearly establishes that this circuit's precedent made federal intervention inappropriate.  Therefore, these co-defendants maintain that plaintiffs knew from the outset that their claims were meritless and acted unreasonably and vexatiously,[14] by continuing to aggressively litigate their claims.

------

        [13]In opposition, the plaintiffs does not dispute co-defendants' prevailing party status.  Plaintiffs dedicate their efforts to argue that the claims brought by them in federal court cannot be characterized as frivolous or groundless.

        [14]Co-defendants alternatively request that an award of attorneys' fees be assessed against plaintiffs' attorneys under 28 U.S.C. § 1927, which provides in

CIVIL 04-2251 (DRD)                    18

In opposition, plaintiffs contend that the claims brought by them raised questions of federal constitutional importance that cannot be characterized as frivolous or groundless.  Specifically, the plaintiffs submit that there cannot be a finding that the complaint was frivolous or without foundation when they obtained substantial relief in some of the claims asserted by them.  In addition, the plaintiffs cite to the First Circuit's opinion in this case in which the appellate panel found that the plaintiffs had alleged a colorable claim under 42 U.S.C. § 1983 for subject matter jurisdiction purposes.  Such a finding, the plaintiffs argue, destroys co-defendants' position that the complaint was frivolous at the time it was filed.  The plaintiffs further claim that co-defendants cannot seriously argue that the complaint was frivolous given the colossal efforts they put into defending the case; that the court should not look to the First Circuit's adverse ruling in deciding the issue; that said decision left intact the relief obtained by the plaintiffs in the district court; and that sanctions under 28 U.S.C. § 1927 and Rule 11 are wholly inappropriate.  The plaintiffs request that the court deny co-defendants' petitions for attorneys' fees.

In this case, a review of the record and the applicable law points to a finding of frivolity.  At the time the complaint was filed, Tang v. R.I., Dep't of Elderly Affairs, 163 F.3d at 13, and when it was subsequently amended, there was clearly established precedent in the First Circuit making federal intervention inappropriate.

relevant part that: "Any attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the … attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; Fed. R. Civ. P. 11.

CIVIL 04-2251 (DRD)                    19

While the plaintiffs asserted "colorable" claims under section 1983 upon which the court "could have exercised jurisdiction," Rosselló-González v. Calderón-Serra, 398 F.3d at 15, they chose to ignore the caselaw directing federal courts not to intervene in local electoral disputes.  That they presented colorable claims only means that the complaint and amended complaint properly alleged a constitutional violation under 42 U.S.C. § 1983.[15]  See Uniroyal Goodrich Tire Co. v. Mut. Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("There is a significant difference between frivolous claims and colorable but unsuccessful claims.").  It does not make the complaint any less frivolous given that a properly pled section 1983 claim can be foreclosed by other legal principles such as comity and abstention rules.  See Gilyard v. S.C. Dep't of

_____

[15]In his concurring opinion, Judge Howard stated the following:

> 2. Notwithstanding our statement that the district court has federal question jurisdiction over the case, we have concluded that the district court abused its discretion by asserting jurisdiction over it.  I would rather we characterize the matter somewhat differently. There is no question, of course, that the district court has subject matter jurisdiction of a federal civil rights claim pleaded under 42 U.S.C. § 1983.  The issue is whether the pleaded federal claim is justiciable. This question is not a matter of discretion; it is an issue of law.  See Bonas v. Town of N. Smithfield, 265 F.3d 69, 73-75 (1st Cir. 2001). And it is an issue of law that implicates the court's "jurisdiction" only in the sense that justiciability is regarded as a jurisdictional doctrine. See id.

Rosselló-González v. Calderón-Serra, 398 F.3d at 20.  Under such characterization of the issue, plaintiffs' complaint appears even more frivolous for as a matter of law, it was clear that the claims asserted were not justiciable.

CIVIL 04-2251 (DRD)                    20

Youth Servs., 667 F. Supp. 266, 276 (D.S.C. 1985) (awarding attorney's fees to a defendant where plaintiff's section 1983 claims were legally baseless in that they were foreclosed by Eleventh Amendment immunity).        At the time the complaint in this case was filed, it was clearly established that controversies involving state and local elections are matters "within the exclusive competence of the state courts." Bonas v. Town of N. Smithville, 265 F.3d at 74.  Indeed, federal courts should not "inject [themselves] into the midst of every local electoral dispute" thereby undertaking resolution of what has been referred to as "garden variety election irregularities." Id. (quoting Griffin v. Burns, 570 F.2d 1065, 1076 (1st Cir. 1978)).  Federal intervention may be appropriate, on the other hand, under a few narrow and well-delineated exceptions.    Factors to be considered in determining the appropriateness of federal intervention are: (1) "whether a discrete group of voters has been disenfranchised[; (2)] whether there was a state process in place to handle the questions posed by the plaintiffs[;] and [(3)] whether the plaintiffs had availed themselves of that state process." Rosselló-González v. Calderón-Serra, 398 F.3d at 16.  According to the First Circuit, none of those factors were present in this case.  First, the plaintiffs were not claiming, at least with respect to the split ballots issue, that a discrete group of voters had been disenfranchised. To the contrary, if plaintiffs' position would have prevailed on that issue, an estimate of 28,000 voters would have been disenfranchised. Id.[16] Second,

---

[16]This factor weighed heavily in the final conclusion since there is a strong "presumption in favor of non-intervention if the party requesting intervention

CIVIL 04-2251 (DRD)                    21

the plaintiffs had a state process in place to handle the issues raised by them.  Under

Puerto Rico law, the plaintiffs had a statutory right to appeal Gracia's determination

to adjudicate the three mark split vote ballots to the Puerto Rico Court of First

Instance.  16 P.R. Laws Ann. § 3016a.  But the plaintiffs decided not to avail

themselves of said process.  Instead, the plaintiffs bypassed the state process

altogether and filed the present action in federal court, although their claims did not

fall within the ambit of any of the "few narrow and well delineated exceptions" to

the non-intervention rule for local electoral disputes.  The appeals court conclusively

found that our circuit precedent, specifically Griffin, Barreto-Pérez and Bonas,

"clearly required the District Court not to intervene."[17]   Rosselló-González v.

Calderón-Serra, 398 F.3d at 18.

     In view of the above, the claims asserted by plaintiff were frivolous and/or

unfounded.  See Andrade v. Jamestown Hous. Auth., 82 F.3d at 1192; see also

Coates v. Bechtel, 811 F.2d 1045, 1050 (7th Cir. 1987) (observing that an award of

attorneys' fees to a defendant is appropriate when a civil rights suit is lacking in any

_____

cannot show that a discrete group of voters has been disenfranchised by the
challenged local action." Rosselló-González v. Calderón-Serra, 398 F.3d at 16 (citing
Partido Nuevo Progresista v. Barreto-Pérez, 639 F.2d at 828).

     [17]The appeals court had previously determined that there was no federal
question presented in the action removed from state court.  There was no federal
question in the procedural sense because no federal question was pled within the
four corners of the complaint.  There was no federal question in the substantive
sense, once again because of the well-established rule against intervention in local
electoral disputes.  The case was ordered remanded to the Puerto Rico Supreme
Court from which it was improvidently removed.  Rosselló-González v. Calderón-
Serra, 398 F.3d at 10.

CIVIL 04-2251 (DRD)                    22

legal or factual basis).  The action brought by the plaintiffs was foreclosed by precedent and they insisted in pursuing that claim even in light of unambiguous caselaw.  See Hamer v. County of Lake, 819 F.2d 1362, 1367 (7th Cir. 1987); see also Perry v. Orange County, 341 F. Supp. 2d 1197, 1205 (M.D. Fla. 2004) (holding that a court should be reluctant to award fees to a defendant unless plaintiffs refused to acknowledge clear precedent).  Therefore, I find that the co-defendants (SEC, Gracia, Cruz and Acevedo) are entitled to recover attorneys' fees as prevailing defendants.

      2.  Reasonableness of Fees

      Having determined co-defendants' entitlement to recover attorney's fees under section 1988, I must now determine whether the award requested is reasonable.  As stated above, to calculate a reasonable amount of attorney's fees, the court must determine the hours reasonably expended in the litigation, multiplied by a reasonable hourly rate.  Gay Officers Action League v. Puerto Rico, 247 F.3d at 295; Coutin v. Young & Rubicam P.R., Inc., 124 F.3d at 337 ("The lodestar method is the strongly preferred method by which district courts should determine what fees to award prevailing parties in actions that fall within the ambit of section 1988.").  In addition, under the lodestar approach, the hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

CIVIL 04-2251 (DRD)                    23

Co-defendants SEC and Gracia request a total award of $176,650.00 allocated as follows:

1. Attorney Pedro A. Delgado Hernández          $45,050.00
   (360.4 hours worked @ $125.00 per hour)

2. Attorney Ramón Walker Merino                 $32,250.00
   (258 hours @ $125.00 per hour)

3. Attorney Richard Pildes                      $43,000.00
   (86 hours @ $500.00 per hour)

4. Attorney Eileen García Wirshing              $32,025.00
   (256 hours @ $125.00 per hour)

5. Attorney Gina Méndez Miró                    $11,987.50
   (95.9 hours @ $125.00 per hour)

6. Attorney Rosángela Sanfilippo Resumil        $ 6,000.00
   (48 hours @ $125.00 per hour)

7. Paralegal Lorelly Marcano Reyes              $ 6,337.50
   (81.5 hours @ $80.00 per hour)

(See Docket No. 215, at 8.)  These attorneys submitted contemporaneous time records documenting the above with the dates of the work performed, a description of the type of work carried out and the time invested.  They also maintain that the rates set for these attorneys are reasonable reflecting the fixed rates set under contract with the SEC.

On the other hand, in their application for attorneys' fees under section 1988, co-defendants Cruz and Acevedo request that they be awarded a total of $857,719.00. (See Docket No. 216, at 12.)  The requested award is broken down by these co-defendants as follows:

CIVIL 04-2251 (DRD)                    24

    1.  Attorney Pedro E. Ortiz-Álvarez[18]       $  6,600.00
    (22 hours @ $300.00 per hour)

    2.  Attorney Johanna M. Emmanuelli-Huertas   $ 63,300.00
    (253.2 hours @ $250.00 per hour)

    3.  Attorney Jorge Martínez-Luciano       $ 56,880.00
    (284.4 hours @ $200.00 per hour)

    4.  Attorney Gina Ismalia Gutiérrez-Galang   $ 53,220.00
    (266.1 hours @ $200.00 per hour)

    5.  Attorney Lourdes M. Torres Esteves     $  1,350.00
    (9 hours @ $150.00 per hour)

    6.  Attorney Darlena H. Connick-Waska     $    75.00
    (0.5 hours @ $150.00 per hour)

    7.  Paralegal Staff                    $ 19,012.50
    (211 hours @ $90.00 per hour)

    8.  Attorney Charles Cooper           $246,989.00
    (404.9 hours @ $610.00 per hour)

    9.  Attorney Michael Kirk             $ 16,683.00
    (40.2 hours @ $415.00 per hour)

    10. Attorney Brian Koukoutchos         $ 68,256.00
    (172.8 hours @ $395.00 per hour)

    11. Attorney Vincent Colatriano         $ 85,725.00
    (228.6 hours @ $375.00 per hour)

    12. Attorney Nicole Moss             $ 55,178.00
    (234.8 hours @ $235.00 per hour)

    13. Attorney Derek Shaffer            $ 85.822.00
    (365.2 hours @ $235.00 per hour)

---

[18]Former Dean of the Pontifical Catholic University of Puerto Rico School of Law.

CIVIL 04-2251 (DRD)                    25

      14. Attorney Kathryn Wheelbarger        $ 28,638.00
      (133.2 hours @ $215.00 per hour)

      15. Attorney John Brown        $ 20,352.00
      (169.6 hours @ $120.00 per hour)

      16. Attorney Sarah Hamilton        $  2,760.00
      (36.8 hours @ $75.00 per hour)

      17. Attorney Stephanie Sherman        $  5,257.50
      (70.1 hours @ $75.00 per hour)

      18. Attorney David Thompson        $  3,585.50
      (10.1 hours @ $355.00 per hour)

      19. Attorney Christopher Danley        $  1,225.50
      (5.7 hours @ $215.00 per hour)

      20. Attorney Elisabeth Cook        $  4,935.00
      (21 hours @ $235.00 per hour)

      21. Attorney Charles Fried[19]        $ 31,875.00
      (42.5 hours @ $750.00 per hour)

(Docket No. 216, at 12.)  In addition to submitting contemporaneous time records in support of the above-requested award, the co-defendants also submit information regarding the years of experience and education of their attorneys.  Co-defendants further claim that the rates are reasonable in light of the complexity of the case and the comparable market for private attorneys and given the nature of the case, the long hours the court set for hearings and the time sensitive nature of the elections, for which all the work had to be performed on short notice.  Finally, the co-defendants maintain that the fee request is reasonable also because these attorneys

_____

[19]Former Solicitor General of the United States.

CIVIL 04-2251 (DRD)                        26

were precluded from other employment during the lengthy hearings conducted in this case and during the appellate process.

          After reviewing co-defendants submissions, and since the plaintiffs do not mount a challenge to the reasonableness of the fee calculation, I find no reason to reduce the award requested.  The defendants in this case prevailed in all claims.  Judgment was entered dismissing the case in its entirety.  Furthermore, the record is witness to the amount of work that the present case required given the number of individuals named as defendants and this court's efforts to painstakingly determine issues such as its own jurisdiction and the remedies, if any, to which the parties were entitled.  Because of the importance of the issues, in the aftermath of a highly contested election, preparation for the case required long hours of work by highly competent counsel in presenting the different positions of the parties, and in preparation for lengthy hearings and the appellate process.  Therefore, after considering the principles set forth in <u>Coutin v. Young & Rubicam P.R., Inc.</u>, 124 F.3d at 337, I find that an award of $176,650.00 to co-defendants SEC and Gracia and of $857,719.00 to co-defendants Cruz and Acevedo is reasonable.  I recommend that the plaintiffs be ordered to pay the total amount of $1,034,369.00 to co-defendants SEC, Gracia, Cruz and Acevedo.

          C.  <u>Plaintiffs' Application for Attorneys' Fees (Docket No. 218)</u>

          The plaintiffs maintain that they are entitled to attorneys' fees under 42 U.S.C. § 1988.  The essence of plaintiffs' contention is that they are prevailing parties

CIVIL 04-2251 (DRD)                    27

insofar as they sought and successfully obtained relief in the form of a court ordered recount as well as remedial action regarding co-defendants' untimely mailing and mishandling of absentee ballots.  Indeed, the plaintiffs argue that the relief granted by the court with respect to the recount and absentee ballots claims, which was not disturbed on appeal, ultimately altered the relationship between plaintiffs and defendants for the benefit of the plaintiffs.  The plaintiffs claim to have acquired prevailing party status by virtue of the above; therefore, they submit that they are entitled to recover attorneys' fees on those claims.

Co-defendant Calderón, the Committee, the SEC and Gracia oppose plaintiffs' motion arguing that the same is "clearly and obviously" unwarranted.  (See Docket No. 220, at 1.)  These co-defendants contend that the plaintiffs are not prevailing parties because whatever relief they claim to have obtained was not "on the merits" and did not materially alter the legal relationship between the parties.  According to these co-defendants, after the First Circuit's determination that no grounds for federal intervention existed, the final disposition of the causes of action upon which plaintiffs claim a victory was their outright dismissal.  Finally, these co-defendants submit that as to Calderón and the Committee, any award for attorney's fees is particularly inappropriate since all petitions of injunctions against them were dismissed well before the case was decided on appeal.  Co-defendants SEC and Gracia further  maintain  that  plaintiffs'  application  for  fees  reflects  a  profound

CIVIL 04-2251 (DRD)                    28

misunderstanding of applicable law inasmuch as the plaintiffs cannot invoke

prevailing party status under 42 U.S.C. § 1988.

The question before the court is, did the plaintiffs prevail on a significant issue

thereby achieving some of the relief sought in bringing suit?  Hensley v. Eckerhart,

461 U.S. at 433.  Asked differently, did the "actual relief on the merits of [their]

claim[s] materially alter[] the legal relationship between the parties by modifying

the defendants['] behavior in a way that directly benefits the plaintiff[s?]" Gay

Officers Action League v. Puerto Rico, 247 F.3d at 293; see also Tex. State Teachers

Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989) (explaining that to be

a prevailing party under section 1988, "the plaintiff must be able to point to a

resolution of the dispute which changes the legal relationship between itself and the

defendant.")  While a judgment on the merits and/or court-ordered consent decree

might not be the only judicial actions that can support a finding of prevailing party

status and an award of attorney's fees, see, e.g., Doe v. Boston Pub. Sch., 358 F.3d

20, 24 n.4 (1st Cir. 2004) (taking no position as to whether forms of judicial

imprimatur other than a judgment on the merits or court-ordered consent decree

can convey prevailing party status); see also Roberson v. Giuliani, 346 F.3d 75, 81-

82 (2nd Cir. 2003) and case cited therein (joining majority of courts in holding that

"judicial action other than a judgment on the merits or a consent decree can support

an award of attorney's fees, so long as such action carries with it sufficient judicial

CIVIL 04-2251 (DRD)                29

imprimatur")[20], I do not find that under the facts of this case, the plaintiffs have acquired prevailing party status by virtue of the relief obtained with respect to the recount claim.

The plaintiffs make much of the fact that the court ordered a recount to be conducted prior to completion of the general canvassing. (Docket Nos. 96 and 99.) The court granted said remedy in order to protect its jurisdiction and for the safekeeping of the split ballots at issue. (Id. at 2.) However, such a remedy does not confer prevailing party status to the plaintiffs. It is true that the court-ordered recount was not disturbed on appeal[21] insofar as the plaintiffs stated that they had achieved substantial and complete relief on said claim. Rosselló-González v. Calderón-Serra, 398 F.3d at 8 n.14. But upon concluding that federal intervention was unwarranted, the court of appeals directed this court to dismiss with prejudice all claims related to the simultaneous general canvass/recount issue. Id. at 18. Therefore, said relief cannot be said to have been on the merits of plaintiffs' claims. In addition, the recount order was interlocutory in nature. And even though "interlocutory orders that confer substantive injunctive relief often have been viewed as sufficient to carry the weight of a fee award," such orders are insufficient if for example, they merely serve to maintain the status quo. Me. Sch. Admin. Dist.

_____

[20]Cf. Toms v. Taft, 338 F.3d 519, 529 (6th Cir. 2003) (finding that plaintiffs did not prevail where they obtained neither a judgment on the merits nor a court-ordered consent decree).

[21]Probably, a more accurate characterization is that the reviewing court simply decided not to consider the issue in the absence of an actual controversy.

CIVIL 04-2251 (DRD)                    30

No. 35 v. Mr. R., 321 F.3d 9, 15 (1ˢᵗ Cir. 2003).  The order merely sought to protect

the court's jurisdiction clearly avoiding a finding on the merits of plaintiffs'

entitlement to the relief requested.  In any event, the First Circuit's determination

that federal intervention was improper ultimately dooms plaintiffs' attempt to

recover attorneys' fees.[22]  That the First Circuit did not consider the issue does not

change the fate of plaintiffs' recount claim: dismissal without prejudice.  As to this

issue, plaintiffs did not prevail.  See, e.g., Doe v. Busbee, 684 F.2d 1375, 1381 (11ᵗʰ

Cir. 1981) (denying an award of attorney's fees to plaintiffs who had obtained

injunctions that, though later reversed, had while in effect, enabled 1,800 women

in the plaintiff class to obtain Medicaid-reimbursed abortions); Smith v. Univ. of

N.C., 632 F.2d 316, 352 (4ᵗʰ Cir. 1980).

As to the absentee ballot claim, the plaintiffs present an even weaker showing

regarding their prevailing party status.  The First Circuit's opinion states that the

plaintiffs conceded to have achieved complete and substantial relief from the SEC

regarding their absentee ballots claim.  Rosselló-González v. Calderón-Serra, 398

F.3d at 8 n.14.  The appeals court noted that there was still a question as to whether

the SEC would honor its promise to remedy the absentee ballots problem but that

---

[22]It is noteworthy that the remedy of recount is a remedy that the Supreme
Court of Puerto Rico also granted in its November 20, 2004 decision.  Manuel R.
("Manny") Suárez-Jiménez v. Comisión Estatal de Elecciones, 2004 TSPR 179.  This
opinion, although void when issued, was later reinstated after the case was ordered
remanded to the Puerto Rico Supreme Court.  Manuel R. ("Manny") Suárez v.
Comisión Estatal de Elecciones, 2004 TSPR 208.

CIVIL 04-2251 (DRD)                    31

said open question was not yet ripe.  Id.[23]  In the end, the First Circuit ordered

dismissal of plaintiffs' absentee ballots claim without prejudice.  Once again, there

was no adjudication on the merits of plaintiffs' entitlement to relief on said claim.

        Moreover, the action prompting the SEC to remedy the absentee ballots

problem lacks sufficient judicial imprimatur to confer prevailing party status to the

plaintiffs.  In their submissions, the plaintiffs state that the court ordered the

defendants to remedy the problem of the untimely mailed absentee ballots.  The

record belies such assertion.  In an opinion and order issued November 30, 2004,

the court asserted jurisdiction over the absentee ballots claim.  (Docket No. 136, at

12, amended by Docket No. 150.)  However, in said opinion and order, this court

remained silent as to any particular remedy.  In fact, the court observed that Gracia

had admitted the untimely mailing of the absentee ballots.  (Id. at 6.)  But there is

nothing in the record of this case resembling an order of the court instructing the

SEC or Gracia to engage in a specific course of action.  At most, the court oversaw

the parties' reaching of an agreement in which the SEC and Gracia promised to

provide the remedy.  There is no clear indication that the relief was court-ordered.

Thus, the situation is more akin to a voluntary change to the legal relationship of

the parties for which plaintiffs' complaint served as a catalyst.  And such a voluntary

change in conduct is not sufficient to confer prevailing party status.  Buckhannon

Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. at 605

_____

[23]Obviously, said issue would become ripe only upon the SEC reneging on its
promise.  There is no argument or evidence that the SEC failed to comply.

CIVIL 04-2251 (DRD)                    32

(rejecting the notion that the catalyst theory can support an award of attorney's fees where there is "no judicially sanctioned change in the legal relationship of the parties"); Boston's Children First v. City of Boston, 395 F.3d at 14; New England Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 29-30 (1st Cir. 2002).

Because this court never reached the merits of plaintiffs' claims, Farrar v. Hobby, 506 U.S. 103, 111 (1992) (holding that "to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim"); because the First Circuit ordered dismissal of plaintiffs' case in its entirety; and because under the facts and circumstances of this case I cannot find that plaintiffs were prevailing parties, it follows that plaintiffs are not entitled to recover attorneys' fees under 42 U.S.C. § 1988.  It is, therefore, my recommendation that plaintiffs' application for attorneys' fees be DENIED.

## IV.  CONCLUSION

In view of the above, I recommend that co-defendants Cruz and Acevedo's "Motion to Strike" (Docket No. 221) be DENIED, that the applications for attorneys' fees submitted by co-defendants the SEC, Gracia, Cruz and Acevedo (Docket Nos. 215 and 216) be GRANTED in their entirety, and that plaintiffs be ordered to pay $1,034,369.00 in reasonable attorneys' fees.  Finally, it is also my recommendation that plaintiffs' "Motion for Leave to File Motion for Attorney's Fees" (Docket No. 217) be GRANTED and that their request for attorneys' fees (Docket No. 218) be DENIED.

CIVIL 04-2251 (DRD)                    33

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 27th day of June, 2005.


S/ JUSTO ARENAS
Chief United States Magistrate Judge