# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**PEDRO J. ROSSELLO-GONZALEZ,**
**et al.,**
**Plaintiffs**

**v.**                                        **CIVIL NO. 04-2251(DRD)**

**SILA M. CALDERON-SERRA, et al.,**
**Defendants**

## OPINION AND ORDER

Pending before the Court are several motions from the appearing parties, referred to the Magistrate Judge, moving the Court to grant their respective requests for attorneys' fees and taxation of costs under the arguments expressed therein.[1]

The motions requesting attorney fees are the following: 1) co-defendants the State Elections Commission (SEC) and its Chairman Aurelio Gracia (Gracia) filed on January 21, 2005 (Docket No. 215); 2) co-defendants Gerardo Cruz (Cruz) and Anibal Acevedo Vila (Acevedo) filed on January 22, 2005 (Docket No. 216); and plaintiffs Pedro Rossello-Gonzalez, et al. (Rossello) filed on January 24, 2005 (Docket Nos. 217 & 218). At the outset, the Court notes that Mr. Gerardo Cruz and Mr. Anibal Acevedo-Vila's motion, not only requested attorneys fees but also sought taxation of costs. The Court bifurcates the issues and **ORDERS** the Clerk of Court to tax costs as appropriate.

On June 6, 2005, the Court referred the attorneys' fees and costs matters to Magistrate Judge Justo Arenas for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); and Local Rule 72(b) (Docket No. 234). The Magistrate filed an extensive Report and Recommendation (R & R) on June 27, 2005 (Docket No. 238) recommending that co-defendants SEC, Gracia, Cruz and Acevedo's motions requesting attorneys' fees be GRANTED in their entirety, and that plaintiffs be ordered to pay $1,034,369.00 as reasonable attorneys' fees. Likewise, the Magistrate Judge recommended that plaintiffs Rossello's request for attorneys's fees be DENIED.

---

[1] The Court also referred to the Magistrate Judge for an R & R, co-defendants Cruz and Acevedo's *Motion to Strike* (Docket No. 221); and plaintiffs' *Motion for Leave to File Motion for Attorney's Fees* (Docket No. 217). The R & R recommended that co-defendants' motion to strike be DENIED and that plaintiff's motion requesting leave be GRANTED.

The Magistrate Judge clearly forewarned the parties that any objections to the R & R were to be filed with the Clerk of Court within ten (10) days afer being served with a copy thereof. See Fed. R. Civ. P. 72(b) and Local Rule 72(d). Pursuant to Fed. R. Civ. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir.), cert. denied, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). See also Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set forth in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1stCir. 1993) (stating that "[objection ]to a magistrate's report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

Because plaintiffs have objected to all the determinations relating to the granting of attorneys fees imposed to them by the Magistrate Judge, the Court shall make a de novo determination of the R & R. (Docket No. 239).[2] In turn, the co-defendants have submitted their individual oppositions to plaintiffs' objections (Docket Nos. 240, 241, and 242). Finally, plaintiffs have requested leave to file a reply to co-defendants' objections and have tendered said reply (Docket No. 243).

For the reasons stated herein, the Court **ADOPTS in part** the Magistrate Judge's Report and Recommendation. The Court however **DENIES** co-defendants Cruz and Acevedo's joint *Motion to Strike Plaintiffs' Application for Attorneys' Fees* (Docket No. 221), **DENIES** the State Elections Commission and its Chairman, Aurelio Gracia's *Petition for an Award on Attorney's Fees* (Docket No. 215), also **DENIES** the co-defendants Gerardo Cruz and Anibal Acevedo Vila's *Application for Attorneys Fees and Costs* (Docket No. 216) and finally, further **DENIES** *Plaintiffs' Motion for Attorney's Fees* (Docket No. 218).

---

[2] The Court notes that plaintiffs do not object to the Magistrate Judge's recommendation that defendants' motion to strike plaintiffs' request for attorneys fees should be denied.

## FACTUAL BACKGROUND

The facts of the instant case are well known notwithstanding, the court summarizes them as found by the Court of Appeals for the First Circuit in <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 1 (1st Cir. 2004). Plaintiffs filed an initial complaint on November 10, 2004 asserting various federal constitutional claims under 42 U.S.C. §1983 arising out of the November 2, 2004, Puerto Rico election. At the original complaint (Docket No.1) plaintiffs requested via declaratory judgment that certain absentee ballots sent late to the voters by the SEC in violation of state law and the Constitution of the United States be counted and hence said ballots be enfranchised. Plaintiffs also requested that a written agreement reached by all electoral parties to hold a general recount simultaneously with the general canvass of votes to be enforced under due process and equal protection. The due process and equal protection was based first, on a written agreement entered by all parties placed on the Rules and Regulations applicable to the elections. Further, the request was grounded on a Supreme Court of Puerto Rico recount precedent for close elections dating back to the 1980 gubernatorial election. This request constituted an enfranchisement request. (*See* details *infra*).

Notwithstanding, on November 12, 2004, an Amended Declaratory Judgment Complaint was filed requesting that the State Elections Commission be ordered to: 1) regard the three-mark split ballots,[3] cast for two candidates and under a party insignia different from the party insignia for said two candidates, as an invalid vote. Hence, the request sought to invalidate the described three-mark ballots contained therein under a constitutional challenge grounded on the Civil Rights Act, 42 U.S.C. §1983. Plaintiff alleged a "change of rules" after the elections were held "diluting" the votes of the NPP statehood party; 2) a request to hold simultaneously the general canvass and recount of all votes as described above in violation of due process and equal protection; and 3) to enfranchise certain absentee ballots mailed late by the Commission in violation of state law and of the plaintiffs' federal constitutional rights. Plaintiffs sought declaratory and injunctive relief relating to said challenges. (Docket Entry No. 5).

Parallel to said electoral constitutional challenge filed in federal court, six days later on November 16, 2004, a complaint was filed before the local state courts by several plaintiffs seeking,

---

[3] The defendants originally advised the Court that there were around 28,000 votes of such three-mark split ballots. <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 6-7. However, said ballots only reached 6,776. *See*, **http://eleccionespuertorico.org/referencia/triple.cross.html**

amongst other matters, a declaratory judgment as to the validity of the three-mark split ballots, and an injunction requiring the SEC to adjudicate said ballots. Said plaintiffs insisted that should their three-mark ballots not be counted, they would be deprived of their right to vote and, thus, plaintiffs would be deprived of their due process of law and equal protection under the law. Said complaint was dismissed by the local state trial court without prejudice on the grounds that no actual controversy existed based on a ruling as to the validity of said ballots that had already been provided by the SEC. Immediately thereafter said plaintiffs, bypassing the local appellate court, filed a direct petition before the Supreme Court of Puerto Rico requesting that their rights be adequately established. The Supreme Court immediately asserted jurisdiction.

However, on November 20, 2004, defendants in the case before the Supreme Court of Puerto Rico filed a Notice of Removal and removed the local court case to the District Court. In turn, plaintiffs therein moved the District Court to remand the action alleging several procedural defects in the removal notice, and lack of federal jurisdiction. In response, Commonwealth's plaintiffs filed two mandamus petitions before the Court of Appeals seeking that the District Court be ordered to remand the action. On the night of November 20, 2004, the Supreme Court of Puerto Rico entered a judgment ordering the SEC to adjudicate as valid votes the three-mark split ballots containing the marked candidates for Governor and Resident Commissioner, as well as the benefited party for purposes of maintaining its status as principal party. The Supreme Court also ordered, without being requested, sua sponte, an immediate recount of all votes to be held simultaneously with the general canvassing of the votes.

Meanwhile, on November 20, 2004, the District Court issued an order to the SEC to "set aside and segregate" the three-mark split ballots and to refrain from announcing the winner of the gubernatorial election. Early in the evening of November 20th, the District Court also provided an on the record order to proceed to a simultaneous recount together with the general canvassing being currently conducted. (Minutes of Proceedings November 20, 2004, Docket No. 85). On November 24, 2004, the District Court issued an order ruling that the judgment entered by the Supreme Court of Puerto Rico was void because the removal notice left the Supreme Court without jurisdiction to enter the judgment as the case had been removed prior thereto to the federal court; the Court formally ordered that a recount be conducted; further that the three-mark split ballots were to be counted, identified, segregated but not adjudicated pending final determination by the Court as to these votes under federal law. The defendants appealed the interlocutory order as to the mandate

precluding final adjudication of said three-mark split ballots.[4]

On December 15, 2004, the First Circuit issued a ruling declaring that the District Court should have abstained in the controversy.  Defendants' petitions for Writ of Mandamus were denied and the local state action was remanded in light of the ruling provided on the merits of plaintiffs' complaint, the issuance of the preliminary injunction was vacated with the direction that the District Court dismiss all claims relating to the adjudication of the three-mark split ballots, and all claims relating to the simultaneous general canvass/recount issue, with prejudice.  Further, the District Court was also directed to dismiss without prejudice the claims relating to the absentee ballots and any alleged violations to Puerto Rico Electoral Law.  *See generally*, Rossello-Gonzalez v. Calderon Serra, 398 F.3d 1 (1st Cir. 2004).

### THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

As stated previously, in its R & R, the Magistrate Judge concluded that the co-defendants SEC, Gracia, Cruz and Acevedo were entitled to recover attorneys fees as requested in their respective motions at Docket Nos. 215 and 216.  Likewise, the R & R reasoned that plaintiffs' request for attorneys fees filed at Docket No. 218 should be denied, and that the defendants request to strike plaintiffs' petition for attorneys fees from the record (Docket No. 221) should also be denied.  The Court proceeds to analyze the conclusions reached by the Magistrate Judge under the *de novo* standard of review.

### I. Co-defendants request to strike plaintiffs' petition for attorneys fees (Docket No. 221)

Co-defendants Cruz and Acevedo moved the Court to strike plaintiffs request for attorneys fees from the record on the following grounds: 1) the request was untimely filed and there was no showing of good cause excusing the belated filing; 2) the fees requested failed to comply with the requirements set forth by statute since it was not supported by any documentation or an estimate of the fees sought by plaintiffs; 3) that because the Court of Appeals for the First Circuit had awarded costs to the defendants as prevailing party in this litigation, plaintiffs were barred from asserting prevailing party status hence were precluded from requesting attorneys fees in the instant case; and 4) that plaintiffs' request for a hearing on attorneys fees violated the federal policy against satellite

---

[4] At the request of the plaintiffs, the order of the District Court mirrored the interim remedy ordered as a provisional remedy in Bush v. Gore, 531 U.S. 1046 (2000)(standing for the proposition to "count first and rule upon legality afterwards, is not recipe for producing election results that have the public acceptance democratic stability requires") Bush v. Gore, 531 U.S. at 1047(Scalia, J., concurring).

litigation over fees.  The Magistrate Judge concluded that the co-defendants request to strike should be denied for several reasons.

The R & R recommended that plaintiffs' failure to provide documentation supporting the request for attorneys' fees should be excused because one of the controversies the court must *a priori* address in awarding attorneys' fees is precisely whether plaintiffs may be considered a "prevailing party".  Further, the R & R noted that plaintiffs' motion merely requested a determination as to their entitlement to attorneys fees, and then, should the court grant their petition, a detailed breakdown as to the amount of fees was to be submitted.  Secondly, the Magistrate Judge opined that the instant controversy was to be resolved via memoranda and no hearings were to be conducted because there was no pending issue relating to the clearly established federal policy to avoid a second litigation within the original case, for attorneys' fees.  Thirdly, the argument relating to the appellate costs awards provided by the appellate court relates to the merits of the prevailing party issue which must be addressed by the district court and "has no bearing in the [attorneys' fees] determination".  Finally, as to the timeliness of plaintiffs' request, the Magistrate Judge observed that the due date for said application was January 21, 2005 and that both parties' (plaintiffs, and co-defendants Cruz and Acevedo) motions requesting fees were untimely filed after the term had elapsed.  Notwithstanding, the Magistrate Judge recommended that the court should not enter into weighing which of the reasons provided by the parties for their untimely filing had more merits.  The Magistrate Judge reasoned that since the court has discretion to allow a party's noncompliance with the Local Rules, and because none of the instant parties had suffered any apparent prejudice, in the interest of justice the court should excuse the late filing and the court should proceed to consider both parties requests for fee applications.

As correctly stressed the Magistrate Judge, it is known that "[i]n general, it is for the district court to determine what departures from its rules may be overlooked." United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir.1989)[5] (internal quotation marks, and quotations omitted);

---

[5] Local Rule 332 was formally amended on April 5, 2004, and now appears amended and renumbered as Local Civil Rule 54(a)(They had been prior thereto been amended by "immediate need" and placed in effect on September 29, 2003, local counsel duly notified).  Local Civil Rule 54(a) now states that: "[a]n application for attorneys' fees in those cases in which fees have been contracted for or in any case in which no notice of appeal has been filed shall be filed within forty-five (45) days of entry of judgment.  An application for fees in all other cases shall be filed within thirty (30) days of the disposition of the appeal.  A claim for fees filed before the final disposition of any appeal shall have no effect and a new application must be filed within the time prescribed herein."

Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir.2004) (holding that "the application of a district court's local rule is reviewed for abuse of discretion"). Further, while the district court does not have "unbridled" discretion to ignore the local rules, it enjoys a "considerable latitude in applying local procedural rules ... and in departing from them." Diaz-Villafane, 874 F.2d at 46. Finally, it is settled that the Court of Appeals for the First Circuit will not disturb the district court's departure from its local rules so long as there is sound reason for the departure and no party's substantial rights have been unfairly jeopardized. Id.

The Court notes that the record is devoid of any allegation or evidence that either party has been "unfairly jeopardized" by allowing a belated filing. Instead, the parties have chosen to attack the opponent's motion on grounds of timeliness. Thus, the Court in absence of a claim that prejudice has been or will be suffered as a result of the untimely filing, **ADOPTS in part** the R & R and defendants Cruz and Acevedo's *Motion to Strike Plaintiffs' Application for Attorneys' Fees* is hereby **DENIED**.[6]

**II. The State Electoral Commission, Gracia, Cruz, and Acevedo's request for Attorneys' Fees; Plaintiffs' request for attorneys' fees, and their respective oppositions thereto.**

All appearing co-defendants moved for attorney's fees on similar grounds. Firstly, co-defendants sustain that the arguments proffered in their case in chief prevailed over plaintiffs hence their petition for attorneys' fees should be granted under 42 U.S.C. §1988 as "prevailing defendants" entitled to said fees. Further, co-defendants sustain that plaintiffs' claims were frivolous and groundless because clear federal precedent mandated the court's abstention in those cases wherein state elections are being challenged in federal court [as discussed *infra* no such rule exists, as a matter of law it is pellucid in the First Circuit Court of Appeals domain that the federal court has jurisdiction to enter and has entered in cases involving the **enfranchisement** of state voters. Griffin v. Burns, 570 F.2d 1065, 1078-1079 (1st Cir. 1978); Partido Nuevo Progregista v. Barreto-Perez, 639 F.2d 825, 828 (1st Cir. 1980); Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 15("the federal

---

[6] The Court further notes that although co-defendants Cruz and Acevedo filed an untimely request for attorneys fees and proffered respective reasons for belatedness, the plaintiffs also filed in untimely similar fashion. The Court agrees with the conclusion reached by the Magistrate Judge refusing to weight which reason for noncompliance is better than the other; the Court simply proceeds to tackle the issues on the merits because of the public policy need for all political parties in Puerto Rico and following, consistent with the Magistrate's recommendation, that there is no prejudice alleged or even hinted by any party. The Court emphasizes that both parties were equally at fault in the late filing but considers both requests. *(See* P.23-26 of this Opinion and Order.) The Court further **GRANTS** Plaintiffs' Motion to for Leave to File Reply Memorandum Instanter (Docket No. 243) and **INSTRUCTS** the formal Docketing thereof.

constitution protects the right of all qualified citizens **to vote in local** elections)(Emphasis added.)] In the alternative, co-defendants affirm that plaintiffs continued to litigate their claims after said claims clearly became frivolous, unreasonable or groundless therefore, pursuant to 28 U.S.C. §1927, defendants' claim for attorney's fees is warranted.

In support of their position, co-defendants aver that plaintiffs' claims were "frivolous, groundless and unreasonable" because federal judicial precedent has consistently reiterated that federal courts should not interject into disputes arising in local state elections (no such blanket rule exists specifically as stated *infra*; the opposite result is reached in cases wherein state enfranchisement of voters is alleged. Griffin v. Burns, 570 F.2d at 1078-1079).[7] Consequently, co-defendants affirm that plaintiffs knew prior to filing that federal intervention was inappropriate, thus their claims lacked merit, and that by continuing to litigate aggressively their claims, they acted "unreasonably and vexatiously" and erroneously induced the Court into an abuse of discretion.

In turn, plaintiffs affirm that the claims brought forth amounted to controversies under the federal constitution and cannot be characterized as frivolous or groundless because substantial relief was obtained.  Further, plaintiffs aver that the judgment issued by the appellate court contains specific language sustaining that plaintiffs' complaint contained "colorable federal claims" under 42 U.S.C. §1983 for purposes of subject matter jurisdiction, and that such finding precludes any allegations of frivolity.[8]  Moreover, the plaintiffs sustain that in order to determine whether a claim is frivolous, the Court needs to examine the complaint at the time it was filed and not take into consideration any post-hoc ruling provided afterwards by an appellate court.  Finally, plaintiffs allege that although the appellate court issued an adverse ruling against said party, said decision recognized that plaintiffs had obtained relief to some of their claims before the *nisi prius* court hence sanctions under Rule 11, and under 28 U.S.C. §1927 are unwarranted.

In essence, the co-defendants oppose plaintiffs' request for attorney's fees alleging that plaintiffs should not be considered "prevailing plaintiffs" simply because they were successful in obtaining the remedies sought in two of their claims, to wit, the absentee ballot, and the simultaneous

---

[7] In the instant case the majority opinion further recognizes at 398 F.3d 16n.29 **that state suffrage can be denied based on dilution of votes** in federal court based on Bush v. Gore, 531 U.S. 98(2000) ("the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise". (*quoting* Reynolds v. Sims, 377 U.S. 533, 555 (1964))(case involving a state electoral apportionment matter challenged in the federal court).

[8] *See* Docket Entry No. 223

holding by the SEC of a recount and general canvassing of the ballots issues.  Co-defendants sustain that pursuant to the applicable §1983 jurisprudence, a party is considered having prevailed should it obtain relief on the merits for its claims.  However, an award on the merits must contain the following: 1) the legal relationship amongst the parties be altered, and 2) defendant has modified its behavior in a way that benefits the plaintiff, and 3) that said change has been judicially sanctioned.  Co-defendants affirm that since plaintiffs' claims were dismissed by the Court of Appeals, there is no judgment on the merits thus plaintiffs are precluded from asserting "prevailing plaintiffs" status.[9]

### A. The Applicable Legal Framework and Legal Analysis

### 1) Defendants' request for attorneys' fees

Under 42 U.S.C. §1988 attorneys' fees may be awarded to litigants asserting civil rights violation claims.  In its relevant parts, the statute provides that:

> In any action or proceeding to enforce a provision of section 1981, 1981(a), 1982, 1983, 1985, and 1982 of this title, ... the court, **in its discretion**, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs... (Emphasis ours.)

Likewise, 28 U.S.C. §1927, provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonable incurred because of such conduct".  Further, Rule 11, Fed.R.Civ.P., 28 U.S.C., allows for the imposition of monetary sanctions in the nature of attorneys' fees in such circumstances wherein the Rule has been violated in order "to deter repetition of such conduct or comparable conduct by others similarly situated".  *See*, Rule 11(c) and (c)(2).

Generally, the American Rule prohibits the prevailing party from collecting attorney's fees from the losing party however, attorneys' fees  may be granted only in those circumstances wherein the relevant statute provides such remedy.  Bercovitch v. Baldwin School, Inc., 191 F.3d 8, 10 (1st Cir. 1999)(*citing* Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)).  As previously stated, §1988 provides such a remedy. However, a "court's inherent power to [grant] attorneys' fees [to defendants in civil rights actions] 'should be used sparingly and reserved for

---

[9] The Court notes that co-defendants Calderon-Serra and the Incoming Transition Committee sustain that plaintiff cannot move for attorneys' fees against the former because said co-defendants were dismissed at the early stage of the proceedings (Docket No. 97) hence, plaintiffs are precluded from asserting that they prevailed as plaintiffs against the instant co-defendants, much less assert that they obtained relief on the merits from them.  The clarification is well taken but moot since the court ultimately Denies plaintiffs the request for fees.  (*See* discussion *infra*.)

egregious circumstances.' Thus, the power to sanction must be used with great circumspection and restraint, employed only in compelling situations." Dubois v. U.S. Department of Agriculture, 270 F.3d 77, 80 (1st Cir. 2001)(Internal citations omitted.)

Furthermore, under §1988 the fee shifting standard provides that "fee-shifting in favor of prevailing plaintiffs is the rule whereas **fee-shifting in favor of prevailing defendant is the exception**." Bercovitch, 191 F.3d at 10 (Emphasis added). Although, "a prevailing plaintiff is presumptively entitled to fee-shifting in such a case, a prevailing defendant is entitled to similar largesse only if [it] can establish that the plaintiffs' suit was totally **unfounded, frivolous, or otherwise unreasonable**." Id, (citing Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994)(Emphasis added.))

However, in making this determination "the court must **assess the claim at the time the complaint was filed**, **and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation**". Tang v. State of Rhode Island, 163 F.3d 7, 13 (1st Cir. 1998)(Emphasis added.) As cautioned by the Supreme Court, "it is important that **a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation**." Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n., 434 U.S. 412, 421-422 (1978)(Emphasis added).

Nevertheless, notwithstanding a finding of frivolity, "the district court still **retains discretion to deny or reduce fee** requests after considering all the nuances of a particular case". Tang, 163 F.3d at 15 (Emphasis added.); Cf. Tancredi v. Metropolitan Ins. Co., 378 F.3d 220 (2nd Cir. 2004)(holding that "the §1983 complaint, while meritless, did not justify an award of attorneys' fees"). Finally, a court possesses inherent equitable powers, however, to award attorneys' fees against a party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Mullane v. Chambers, 333 F.3d 322, 338 (1st Cir. 2003). But "[b]ecause these 'inherent powers' must be exercised with 'restraint and discretion,' a district court must describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation of the reasons justifying the award, in order to pass muster with the appellate court". Velez-Arocho v. Jardin, 2005 WL 2030527, at 1 (D.P.R. August 23, 2005).

Likewise, the Supreme Court has determined that attorneys' fees may not be awarded to prevailing defendants unless there is a finding that plaintiffs' action lacked merit in the sense that

it is frivolous, unreasonable or without foundation or that plaintiff continued to litigate after the claim clearly became frivolous and/or vexatious. *See* Hughes v. Rowe, 449 U.S. 5, 14 (1980)(awarding fees under §1983 claims, fees then are awarded pursuant to the standards under §1988). However, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Id. Hence, the conclusion is obvious, "a successful defendant is in a different posture than a successful plaintiff" because "a successful plaintiff vindicates an important congressional policy and is awarded fees against a violator of federal law" while decisions to grant attorneys' fees in favor of a successful defendant "are, and should be, rare". Bercovitch, 191 F.3d at 10 (Internal citations omitted).

Furthermore, it has been determined that monetary sanctions under 28 U.S.C. §1927 are awarded when counsel's conduct is vexatious. Vexatious conduct has been defined as such behavior displayed by counsel during litigation which multiplies proceedings, and/or is found to be unreasonable, harassing and annoying regardless of whether it is intended to be so. Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990). Consequently, should plaintiffs' counsel conduct be considered as multiplying the proceedings, unreasonable and harassing or annoying, sanctions may be imposed under §1927. Finally, in order to be sanctioned under §1927, the attorneys' behavior does not need to be intended to harass or annoy, nor necessary be conscious of its impropriety. To be sanctioned pursuant to §1927, an attorney simply must act disregarding whether the conduct displayed constitutes harassment or vexation, "thus displaying a 'serious and studied disregard for the orderly process of justice'". Id.

Moreover, the district courts within the First Circuit have been consistently instructed to apply an objective standard in assessing whether counsel's conduct was unreasonable and vexatious. Id. However, it must be noted that other sister courts "at a minimum [have] agree[d] that unintended, inadvertent, and [even] negligent acts will not support an imposition of sanctions under section 1927". Id., at 631(Citations omitted). Finally, as to sanctions pursuant to Rule 11, Fed.R.Civ.P., the underlying purpose of said rule is to punish and deter frivolous litigation. Cruz v. Savage, 896 F.2d at 632. Therefore, should there be no finding of frivolity, sanctions under Rule 11 are unwarranted.

Frivolous is defined as "[l]acking legal basis or legal merit; not serious; not reasonably purposeful". Black's Law Dictionary 692 (8th ed. 2004). Likewise, a frivolous claim is "[a] claim that has no legal basis or merit; especially one brought for an unreasonable purpose such as

harassment". Id., at 265.  To the contrary, a colorable claim is "[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or reasonable and logical extension or modification of the current law)".  Id., at 264.  Similarly, an appeal is considered frivolous "if the result was obvious", "the overwhelming weight of precedent militate[d] against [appellant's] position," or there was "no legitimate ground for the appeal, or if the appellant failed to set forth facts to support its legal theory".  E.H. Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1280 (1st Cir. 1990).  Likewise, the court need not find that the appeal was brought in bad faith or with malice. "[I]t is enough that the appellants and their attorney *should* have been aware that the appeal had no chance of success." Id. (emphasis in original).

_____Furthermore, the Christianburg Court at 434 U.S. at 421,stated clearly that:

> the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case [similarly under §1983] upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

Having laid out the legal landscape necessary to determine whether the defendants should be awarded attorneys' fees, the Court must first determine whether under the original scenario, plaintiffs' amended complaint was frivolous thus, the amended complaint must be examined at the time of its filing and any post-hoc reasoning after appeal dismissing the case must be avoided as stated in the respective mandates of the Supreme Court and the First Circuit in Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n., 434 U.S. at 421, and Tang v. State of Rhode Island, 163 F.3d at 13.

The Docket Sheet reveals that plaintiffs' complaint was filed alleging civil rights violations pursuant to 42 U.S.C. §1983 in relation to the local elections held on November 2, 2004. (Docket No. 1).  Notwithstanding, on November 12, 2004, plaintiffs filed an Amended Complaint (Docket No. 5) alleging that: 1) the SEC, and its Chairman decided to count as valid votes the three-mark ballots for two candidates;[10] 2) the SEC decided not to recount the totality of the votes

_____

[10] Plaintiffs asserted that this claim was in violation under the Equal Protection of the Law guaranteed by the Fourteenth Amendment; violations under the Due Process Clause pursuant to  the Fifth and Fourteenth Amendments; violations of the rights of expression and association under the First Amendment; violation of the

simultaneously with the completion of the general election canvass as was specifically performed in another close election in 1980 as ordered in a published Opinion and Order of the Supreme Court in an election where the NPP finally won the election;[11] 3) the SEC refused to count certain late-filed absentee ballots caused exclusively by a late mailing of said ballots by the SEC to the absentee voters creating disenfranchisement of said voters; and 4) the SEC violated plaintiffs' constitutional rights when it made "substantial changes" to the rules governing the election after the votes had been cast (as to three-mark split ballots).  Further, the plaintiffs sought injunctive and declaratory relief moving the court to declare the unconstitutionality of Puerto Rico Act No. 197, 1 P.R. Laws Ann. §§456 *et seq*., to the extent it authorized or allowed the governmental transition process to continue forward before the official governor was officially declared a winner by the SEC.

The Magistrate Judge's R & R reasoned that plaintiffs' claims were frivolous because there was sufficient established precedent stating that controversies involving local elections were within the exclusive competency of the local state courts therefore, federal court intervention was precluded.  The R & R concluded that although the plaintiffs had asserted "colorable" §1983 claims upon which the court could have exercised jurisdiction, "[plaintiffs] chose to ignore the caselaw directing federal courts not to intervene in local electoral disputes".  (Docket No. 238, R & R p.19). The Magistrate Judge cited and quoted relevant caselaw from the First Circuit Court sustaining that federal courts should generally stay aside and not "inject themselves" into every challenge that may arise in a local electoral process.

The R & R enumerated several factors determinative of federal intervention as enumerated by the appellate court, to wit, whether: "1) ... a discrete group of voters has been disenfranchised; 2) ... there was a state process in place to handle the questions posed by plaintiffs; and 3) ... the plaintiffs had availed themselves of that state process."  (Docket No. 238, R & R p. 20).[12]

---

Guarantee Clause pursuant to Article IV, Section 4 of the Constitution; and several other claims under local law.

[11] Plaintiffs asserted that this claim was in violation under the Equal Protection of the Law guaranteed by the Fourteenth Amendment of the Constitution of the United States.

[12] The Magistrate Judge adopted these criteria from Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 16. But the Magistrate Judge overlooked that the original complaint had allegations, which were required to be scrutinized without engaging in post hoc reasoning, as to the enfranchisement of absentee ballots in violation of state and federal law, and equal protection as to the holding of a recount in such a close election.  Said recount was contained in the Rules and Regulations of the SEC as a prior and independent agreement reached by the parties subsequently incorporated into the Rules and Regulations of the election and as mandated by the Supreme Court of Puerto Rico in the election of 1980 in the case of P.P.D. v. Barreto-Perez, 110 D.P.R. 376, 384-385

Specifically, the R & R determined that, at least with respect to the three-mark split ballots, the plaintiffs were not claiming disenfranchisement of voters, and that plaintiffs decided not to avail by the procedures provided by local law to challenge the validity of said three-mark ballots. Therefore, the R & R recommended that plaintiffs' complaint should be deemed frivolous and attorneys' fees should be awarded to defendants because the complaint did not fall within the factors previously enumerated by the court of appeals.

The Court will assess the facts and applicable law *de novo*. First, the Court notes that although the three-mark split ballots' issue does not deal with the enfranchisement of voters, the absentee ballots claim clearly set forth a claim of enfranchisement under the standard set forth in Partido Nuevo Progresista v. Barreto Perez, 639 F.2d 825, 828 (1st Cir. 1980). *See* also, Griffin v. Burns, 570 F.2d at 1078-1079(standing for the proposition that "federal intervention into a state election was appropriate where a significant percentage of qualified and voting electorates was in effect denied its vote." Rossello-Gonzalez v. Calderon-Serra, 389 F.3d at 16. The amended complaint shows sufficient allegations evidencing at least two plaintiffs who were registered voters and had timely requested the SEC the corresponding absentee ballots, but said ballots were not received by the plaintiffs until after the election. Evidently, the absentee ballot claim, if scrutinized under the same analysis cited by the Magistrate Judge in its R & R, evidences an enfranchisement federal claim clearly justiciable by the Court. Consequently, the absentee ballot claim cannot be classified as a frivolous claim.[13]

_____

(1980)(untranslated version), thereby creating an equal protection and due process claim also leading to the enfranchisement of voters.

[13] The allegations of the complaint as to the absentee ballot were not that of a "toothless tiger",(considering the mandate of the law of Puerto Rico, requiring the SEC after receiving a request from qualified absentee voters "... **shall promptly** deliver or send [by the Commission] by certified mail to the petitioner ... three electoral ballots..." 16 P.R. Laws Ann. §3238 (Emphasis added). The regulation, according to an admission by Chairman Gracia, required the SEC, under local law to count the absentee ballots if they were received 30 days from receipt by absentee voters in the continental U.S., and 45 days from receipt for those outside continental U.S. (Transcript November 19, 2004, P. 29, Docket No. 118). Moreover, federal laws requires that as to plaintiff Luis Fortuño, participating as a candidate for Commissioner Resident, his ballot for a federal electoral position must have been sent to all absentee voters "not less than thirty days before the election". 42 U.S.C. §1973(ff)-1(a)(2). (At the time the complaint was filed, Fortuño was a plaintiff, as he had not been certified by the SEC; the ballot of Fortuño was also the same ballot of candidate Rossello for Governor. *See* appendix in Rossello-Gonzalez, 398 F.3d at 21, Appendix A). Moreover, the Chairman for the SEC, admitted that the state law stated that the absentee votes must be returned to the SEC not later "than the close of the polls" under 16 P.R. Laws Ann. §3238. (Transcript November 19, 2004, P. 30, Docket No. 118). However, the absentee ballots were actually sent to the absentee voters between October 15, through October 30th in clear violation of local law requiring "prompt delivery" and also in violation of federal law (requiring sending the absentee ballots thirty days prior to the election)(Transcript November 19, 2004, P. 26, Docket No. 118). Further, there was no way that overseas absentee ballots could timely

Moreover, oral testimony was received by the Court during the preliminary injunction hearing by the SEC's Chairman, Mr. Gracia, admitting that the absentee ballots had been all mailed in contravention of local electoral law and that said ballots had to be counted once returned to the SEC. (*See*, Transcript November 18, 2004, Docket No. 118, P. 26, 41). Furthermore, the Court advised the parties that there was federal law applicable to the instant controversies protecting absentee voters' rights. (*See* Opinion and Order at Docket No. 150, P. 6 n.4).[14] Bluntly expressed, the absentee ballots were all not timely mailed as required under Puerto Rico statutes and as timely required under federal law. The late sending of the ballots in contravention to state and federal law clearly shows that "significant percentage of qualified voters [the absentee voters] was in effect [being] denied its vote". Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 16.

Lastly, the First Circuit Court recognized that plaintiffs "[had] achieved complete and substantial relief from the Commission [SEC] with respect to [the absentee ballots] claim" and no other consideration had to be given by the appeals court. *(See* Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 7 n.15). Indeed, should plaintiffs' absentee ballots claims be categorized frivolous, defendants have failed to provide a reason as too why the relief sought was provided to plaintiffs voluntarily and without the need of a court order but requiring the filing of a complaint. Therefore, as to the absentee ballot claim, the frivolity determination made by the Magistrate Judge is not

---

be received by the SEC "no later than the close of the polls" if the votes were sent from October 15 to October 30, 2004 via certified mail. Hence, the situation of the electoral absentee ballots was critical and constituted a potential mass disenfranchisement looming at the time the complaint was originally filed. Further, Chairman Gracia, admitted that the law as to the absentee voters had to be amended to comply with the requirement of sending the absentee ballots thirty days prior to the elections. ("I don't want to sound like I am trying to justify the untimely sending of the absentee ballots, but I believe that our electoral law, in all honesty, needs an amendment in order for us to be able to provide compliance with the requirement of sending the ballots 30 days before the election".) (Transcript November 19, 2004, Docket No. 118, P. 27). The factual scenario parallels to that described in Bonas v. Town of North Smithfield, 265 F.3d 69, 75 (1st Cir. 2001)("... total and complete disenfranchisement of the electorate [or a discrete group of the electorate] as a whole is patently and fundamentally unfair (and, hence, amenable to rectification in a federal court.")

[14] Federal law regulating the instant matter is provided by *The Overseas Citizens Absentee Voting Act*, 42 U.S.C. §1973(ff) *et seq*. (Regulating military personnel and absentee overseas voters to vote in federal elections. Plaintiff Fortuño was then a candidate to a federal elected officer as Resident Commissioner of Puerto Rico in Washington. Fortuño was a plaintiff in the case. His ballot was in the same ballot as the Governor. (*See* Addendum to Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 21.) The Law applies to P.R, 42 U.S.C. 1973(ff)(6); and by 50 App. U.S.C.A. §595[(regulated states being prohibited from altering the residence of military personnel while they are serving in the military for the purposes of federal and state elections.) Furthermore, local electoral law provides that the absentee ballot, be "promptly delivered" ensuring that said ballot be timely cast. 16 P.R. Laws Ann. §3238(absentee ballots were required to be mailed under local and federal law by the Commission 30 days prior to election and they were sent from October 15 through October 30 as admitted by SEC's Chairman Gracia. (Transcript November 19, 2004, Docket No. 118, P.26))].

==justified== once the claims are examined at the time the complaint was filed and post hoc reasoning is excluded as to the fact that plaintiffs did not ultimately prevail on the split ballot issue. Christianburg, 434 U.S. 421-422; Tang v. State of Rhode Island, 163 F.3d at 13.

Likewise, as to the simultaneous operation of the electoral recount and the general canvass, the Court of Appeals also recognized that plaintiffs were provided an adequate relief to said claim.[15] Further, the district court notes that the Supreme Court of Puerto Rico, sua sponte, determined that this claim was justiciable when an order by said court was entered directed to the SEC as to the 2004 elections to perform simultaneously the general canvass and the ballots' recount.

In words of the Supreme Court of Puerto Rico:

> In order to bring some peace of mind to the People of Puerto Rico, this Court orders the State Elections Commission, an official organism comprised of its Chairman and an Electoral Commissioner representing each one of the major political parties, to immediately commence the <u>recount</u> of those votes, together with the vote canvassing.

> By taking this course of action, we are standing by our pronouncements of approximately two decades ago, when in P.P.D. v. Barreto-Perez, *supra*, at p. 387, we stated that:

> The country is going through moments of great difficulty and tension. Under these trying circumstances, it is indispensable that we act with serenity and sensitivity. The vital thing is for the people of Puerto Rico as a whole to triumph; that the quality of its democracy not be reduced nor the cleanliness of its electoral processes be stained; that our Constitution and our laws be scrupulously respected. **We make a call to the country to maintain the utmost calm and restraint at all times**. (Emphasis in the original).

*See* Suarez-Jimenez v. Comision Estatal de Elecciones, 2004 WL 2668107, issued on November 20, 2004, Translated at Docket No. 120-3, P. 17, restated by the Supreme Court of Puerto Rico after the Rossello-Gonzalez v. Calderon-Serra Opinion of the First Circuit Court of Appeals (citations omitted) at 2004 WL 2965452.[16]

---

[15]*See* Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 7 n.14.

[16] The opinion issued by the Supreme Court of Puerto Rico was declared "null and void" by the District Court because it was issued after the local court was served with petitioners' Notice of Removal. The United States Court of Appeals for the First Circuit agreed with the declaration of nullity issued by the district court as to the Supreme Court of Puerto Rico's lack of jurisdiction because the notice of removal had been served at 11:48 a.m. on November 20, 2004, and the judgment was not issued until that evening. (*See* Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 8 n. 23 stating: "[w]e agree with the District Court that the Supreme Court's judgment was void. The governing statute provides that the filing of 'a copy of the notice [of removal] with the clerk of [the] State court

The Court briefly proceeds to examine the recount claim made by plaintiffs only to determine potential frivolousness. A recount in a close election was originally agreed by the parties prior to the elections and subsequently placed in the Rules and Regulations of the SEC. (*See* Transcript November 19, 2004, Docket No. 118, P. 53-56).[17] The parties confirmed the recount procedure after the original results were announced the night of the elections following the express language of the Rules and Regulations. However, Commissioner Cruz after speaking to candidate elect Anibal Acevedo-Vila later recanted as admitted by the testimony of SEC's Chairman Gracia. Notwithstanding the clear language of the Rules and Regulations, Chairman Gracia concluded that since the consensus was lost, the canvass should proceed without a recount. (*See* Transcript November 19, 2004, Docket No. 118, P. 56-64). SEC's Chairman Gracia, followed a local Circuit Court of Appeals decision that determined that the stipulation reached was not quasi-legislative in nature and hence not binding. However, the stipulation adopted by the commissioners had independent grounds for validity, it constituted a prior valid written agreement independently reached to recount and canvass the ballots simultaneously in a close election. Moreover, the Supreme Court of Puerto Rico had ordered a full recount together with the general canvass in a similar federal scenario in the 1980 elections which clearly was a stronger precedent that a court of appeals decision. PPD v. Barreto Perez, 110 D.P.R. at 384-385 (*See* quotation *infra* P. 16 of this opinion). Finally, the Supreme Court entered a final decision in the close election of 2004 ordering a simultaneous recount as it did in the 1980 elections. *See* Suarez v. Comision Estatal de Elecciones,

---

... effect[s] the removal and *the State court shall proceed no further* unless and until the case is remanded." 28 U.S.C. §1446(d)(emphasis added). The Supreme Court received notice of the removal at 11:48 a.m. on November 20, 2004 but did not issue judgment until that evening. The judgment is thus, as the District Court found, a nullity".) Notwithstanding the determination as to the nullity of the judgment entered by the Supreme Court of Puerto Rico, the Magistrate Judge noted that the Supreme Court of Puerto Rico had "re-issued" its November 20, 2004 judgment. However, an examination of the language used by the Supreme Court of Puerto Rico in its "re-issued" judgment reveals otherwise. Instead, the language used by the Puerto Rico Supreme Court provides that the November 20, 2004 judgment was to be reinstated and that the rulings provided therein were valid, clearly contrary to the Circuit Court decision as to the nullity of the original decision. (*See* Suarez-Jimenez v. Comision Estatal de Elecciones, 2004 WL 2965452, issued on December 23, 2004.) The reasoning of the majority was precisely the basis for the dissent of Justice Rebollo in Suarez-Jimenez II. The re-issuance of the original Opinion, according to Justice Rebollo was both "tragic and painful". (Translation ours.)

[17] The transcript reveals that SEC's Regulation 118, subsection eight provides that: "[i]n the event that the preliminary result for particular offices show evidence of a close election as defined in Article 6.011 of the Electoral Law of Puerto Rico, a simultaneous recount shall be conducted. When the vote count begins the commission shall identify what precincts qualify for a recount based on preliminary results. The candidate involved shall be notified of such determination." According to Chairman Gracia, the above regulation was independently agreed upon by all party's Commissioners and was placed in the Rules and Regulations. Said agreement was reiterated the night of the elections on November 2, 2004, but later the PDP Comissioner withdrew from the agreement.

2004 WL 2668107 at 8.  The claim of plaintiff was one of enfranchisement also within the guidance of Griffin v. Burns, 570 F.2d at 1078-1079 (Docket No. 120-3, P. 17).  In fact, through the recount procedure each candidate gained around 10,000 mores votes than after the original vote counting of 100% of the original results.[18]

Hence, plaintiff clearly had a cause of action as to the enfranchisement of absentee ballots and hence there was a colorable federal claim to enter into the local election of Puerto Rico under the federal precedents of the First Circuit of Griffin and Barreto-Perez (there was further a violation of federal law).  Therefore, at the very least, the claim as to simultaneous recount could be entertained under supplemental jurisdiction pursuant to 28 U.S.C. 1367.  The supplemental jurisdiction claim was based on an agreement of the parties and on the precedent of the Supreme Court case of 1980 ordering simultaneous canvassing and a recount.  See P.P.D. v. Barreto-Perez, 110 D.P.R. 385-386(stating that a recount was ordered in an election wherein the commonwealth candidate was ahead by a small margin.)  As stated previously, the litmus test, as to a valid precedent to recount was fulfilled when the Supreme Court in its recent "null" decision reiterated its 1980 decision and ordered the general recount to be performed together with the general canvassing of votes.  See Suarez v. Comision Estatal de Elecciones, 2004 WL 2668107 at 8 (Docket No. 120-3, P. 17).

Finally, as to the three-mark ballots for two candidates the Court pauses to examine the words of Circuit Court Judge Howard in its concurrent opinion wherein he stated:

> Notwithstanding our statement that the district court has federal question jurisdiction over the case, we have concluded that the district court abused its discretion by asserting jurisdiction over it.  I would rather we characterize the matter somewhat differently.
>
> ...
>
> But after Bush v. Gore, (citations omitted), I cannot discount the possibility that a viable federal vote-dilution claim might lie in some circumstances where a post-election rule change has the effect of causing previously invalid ballots to be adjudicated.

> Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 20.

---

[18]  See, http://eleccionespr2004.ceepur.org/elecciones2004/principal.aspx?Cargo=GOB&Nivel=ISLA; http://eleccionespr2004.ceepur.org/recuento/principal.aspx?Cargo=GOB&Nivel=ISLA, Official site of the State Elections Commission.

The Majority Opinion also recognized that it could not foreclose the possibility of a case in which federal intervention would be appropriate without a showing of disenfranchisement meaning that a claim could potentially be entertained in federal court in a case involving vote dilution involving the counting of previously invalid ballots.

The Majority Opinion stated as follows:

> We do not foreclose the possibility of a case in which federal intervention would be appropriate without a showing of disenfranchisment.  The most obvious example of this would be a case involving vote dilution.  Bush v. Gore, 531 U.S. 98(2000)(citations omitted)("It must be remembered that 'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'")(*quoting* Reynolds v. Simms, 377 U.S. 533, 555 (1964)).

> Here, however, the Rossello Plaintiffs' claim that the Commission's 'change in the rules' after the election somehow 'diluted' their vote for their political party of choice is without merit because there was no clear rule prior to the election that the three-mark split ballots were invalid.

> The Rossello Plaintiffs' claim that the three-mark split ballots were adjudicated inconsistently on election night (and immediately thereafter), on the other hand, presents a much stronger claim for federal intervention without a showing of disenfranchisement.  That claim, however is rendered moot by the fact that all ballots will be adjudicated in the same uniform manner during the recount.  *See* Bush v. Gore, (Citations omitted)(addressing situation where "the standards for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another.").

Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 18n.29.[19]

---

[19] The Court has cited the entire thought of the Court at footnote no. 29 (*supra*) for the sake of completeness.  Consideration of the last paragraph for purposes of the instant requests for attorneys' fees would constitute a "post hoc reasoning" which this court is barred from undertaking in determining frivolousness to potentially impose fees by express mandate of the Supreme Court.  Christiansburg, 434 U.S. at 421-422.

Plaintiffs' original claim as to the three-mark split ballot did not prevail notwithstanding a colorable claim was made.  Examining the facts in the light most favorable to plaintiffs, the Court must examine the record at motion to dismiss level.  Aulson v. Blanchard,83 F.3d 1,3 (1st Cir. 1996)(citations omitted); see also Berríos v. Bristol Myers Squibb Caribbean Corp., 51 F.Supp.2d 61 (D.Puerto Rico 1999).  The court restates the claims of plaintiffs merely to ascertain potential frivolousness in the federal claims.

Plaintiffs claimed that an election is a constitutional exercise of a voter's right to select public officials and not an exercise to elect a party.  16 P.R. Laws Ann. §3205.  Plaintiffs then refer to the validity of a ballot cast under an insignia of a party as a "straight ballot" which is defined under the law as a "[voter casting] his/her vote for the **entire slate** of a single political party," 16 P.R. Laws Ann. §3003(31)(emphasis ours), and at the same time in the same ballot containing exclusively the candidates for Governor and Resident Commissioner ballots.  Plaintiffs then

claim that the definition of "split ballot" contained under the law at 16 P.R. Laws Ann. §3003(33), allowing the voter to vote for "any combination of candidates" is to be read in conjunction with the definition of a "straight ballot" (a single vote under the party insignia signifies a vote for all the party candidates in that particular ballot) resulting in that the total repudiation of the only two candidates under the party insignia nullifies the vote as a double contradictory vote.  In other words, a voter cannot vote for a party without voting at the same time for any of its only two candidates in the ballot.  Plaintiffs' argument is further substantiated by the instructions to the voter in the ballot as to how to enter a valid split ballot. (Exhibit No. 4, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04-2251, Addendum Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 21(appendix)).  In the "how to vote split" instruction of the ballot for Governor and Resident Commissioner it is clearly stated that "to vote split, **a valid mark (X)** is made under the emblem of your preferred party and **a mark** is made next to another candidate outside the column of your party, or you write the name of another person of your choice under the corresponding position in the last column for direct nomination" (Emphasis ours).

Plaintiffs urge that the definition of a mark refers to a singular "X" under either the Governor or that of the Resident Commissioner but not both.  Plaintiffs further sustain that the requirement at the last sentence that "you can vote for only one candidate for Governor and one candidate for Resident Commissioner" refers only to a reiteration of the general rule of law that two votes for the same candidacy annuls the vote.  16 P.R. Laws Ann. §3262.  This is contrasted with the legislative ballot with similar instructions but allowing not **a valid mark** as in the gubernatorial ballot, but allowing "**a mark next to one or more candidates outside the column of your party**" to accomplish a valid split ballot vote.  Hence a vote of only one "X" is allowed either for Governor or for Resident Commissioner in a valid split ballot; contrariwise allowing two "X's", one for Governor and one for Resident Commissioner, outside party lines, allows a vote for the party without recording a single vote for any candidate of that party, is contrary to the definition of a vote for a party.  (*Infra*.)

Further, Plaintiffs aver that the Rule 81 of the Regulation for the General Elections and General Canvassing of 1984 entitled *Criteria to Adjudicate Split Votes in the Split Ballots* (Exhibit No. 2, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04- 2251) which allows for the vote of a candidacy for Governor and in a separate paragraph for Resident Commissioner but the definition is not in the conjunctive.  Moreover, in the Procedure Manual for the General 2004 Election, (Exhibit No. 1, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04-2251(DRD)), published by the Electoral Commissioner providing guidance to the officers at the tables and/or to be used as guidance for instructions to the table representatives of the parties, the example provided is one of one "X" for the party and one other "X" in the candidate for Governor **or** for Resident Commissioner as per the instructions in the ballot but not two marks outside the party (one for Governor and one for Resident Commissioner)(Exhibit No. 4, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04- 2251).  Similar manuals for the 1996 and 2000 elections also have **exclusively** the previous described example.  In none of the Manuals of Procedure for previous elections published by the SEC wherein the split ballot form of voting for gubernatorial and resident commissioner votes is illustrated, as to the elections of 1996, 2000, and 2004, is there any example describing  voting in split ballot fashion **for a party different than a registered vote in such ballot for both the Governor and the Resident Commissioner**. (Exhibit No. 4, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04- 2251).

Moreover, the Commission produced at the request of plaintiffs a video showing the totality of T.V. advertisements made in the 2004 election advising the local electorate on the proper form to cast a split ballot, none contemplate as a valid illustrated split vote, the split ballot object of this case, (Exhibit No. T, Pedro Rosselló v. Sila M. Calderón, Civil Case No. 04- 2251(DRD)).  The advertisement shows the split ballot as one "X" under the insignia and one "X" for another candidate either that of Governor or that of Resident Commissioner but there is no example in any advertisement a vote for both the Governor and the Resident Commissioner outside of their respective party insignia.

Plaintiffs further emphasized that the court had received proof, when the matter of the described split votes was originally raised by the NPP representatives at the SEC's offices, at the general canvassing on November 10, 2004, and November 11, 2004, that the same split ballots were adjudicated differently by floor supervisors of the PIP and PPD representatives as either straight PIP votes or PIP mixed votes which circumstantially showed that this type of vote containing three "Xs" was something new even for the seasoned floor supervisors of different party representative performing the general canvassing, at the SEC.

The pronouncement by the Majority Opinion previously cited, 398 F.3d 18n.29, by itself, rejects any conclusion reached as to the possibility that federal courts should always abstain in disenfranchisement of vote cases wherein a challenge to state elections is brought forth in federal court.   Certainly, the fact that generally federal courts should abstain from intervening in state electoral processes do not preclude the reality that a colorable federal claim challenging state elections may be filed in federal courts.  As stated previously, there is a difference amongst colorable and frivolous claims.   The factual scenario portrayed by Judge Howard in its concurring opinion potentially opens federal doors although the claim may ultimately be denied on the merits.   In fact, the **Majority Opinion, as expressed earlier, recognizes the legitimacy of a debasement or dilution case leading to a suffrage denial claim in a state election to be filed in federal court after** Bush v. Gore, *supra***, and following the case of** Reynolds v. Sims, *supra***, just as rightfully as a claim of enfranchisement of voters is recognized**.   Certainly, as previously stated, plaintiffs sought relief for clear violations to federal law which could have been challenged before this Court. The fact that the district court should have ultimately abstained does not make a claim less colorable, frivolous or lacking justiciability.   Abstention is grounded in factors other than frivolousness.   *See*, Bonas v. Town of North Smithfield, 265 F.3d at 74-75. (holding that "... federal courts have

---

Finally, plaintiffs averred that voters entering the booth with the Gubernatorial/Resident Commissioner ballot may only make an "X" under the emblem of your preferred party and a mark next to another candidate "but not" next to **one or more** candidates as allowed in the legislative ballot.  The instructions were clear and could not be changed by the SEC or the Supreme Court in violation of due process and equal protection which clearly constitute, according to plaintiffs, changing the rules of the election after the elections are held.  Allowing this method of voting to some was detrimental to those who followed the clear instructions of only making one "X" under a candidate and one "X" under the insignia as an authorized form of voting contained in the ballot instructions as to the proper method of split ballot voting.  Although this argument was ultimately rejected by the appellate court, reasoning that there was no change in rules constituting merely a clarification of the rules, the argument was not frivolous and to the contrary was accepted by the appellate court as a "colorable claim".

The argument of plaintiffs seemed particularly non-frivolous because the instruction literally allowed for only a single "X" for a candidate and a single "X" vote outside the party line of that candidate for the party to vote validly a split ballot.  The jurisprudence in this circuit interpreting Puerto Rican Law is that "when the law is clear and free from all ambiguity, the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof. 31 P.R. Laws Ann. §14 (1967 & Supp. 1989).  In other words, courts, in Puerto Rico and elsewhere, are simply not free to disregard the unambiguous language of a law because the facts of a given case to which the law applies evoke a sympathetic reaction. (citations omitted).... '[a court should not] misread a statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute' (citations omitted).... courts of justice [must] take care.... that hard cases do not make bad law (citations omitted)."   Pritzker v. Yari, 42 F.3d 53, 73-74 (1st Cir. 1994).

jurisdiction over claims arising out of state or local electoral disputes if, and to the extend that, the complaint limns a set of fact that bespeaks the violation of a constitutional right.")

After all, justiciability has been defined as a doctrine which "determines which matters federal courts can hear and decide and which must be dismissed. Specifically, justiciability includes the prohibition against advisory opinions, standing, ripeness, mootness, and the political question doctrine." *See* E. Chemerinsky, FEDERAL JURISDICTION, p. 41. (Aspen Publishers 2003). To the contrary, abstention has been defined as "judicially created rules whereby federal courts may not decide some matters before them even though all jurisdictional and justiciability requirements are met." E. Chemerinsky, at p. 761.

The court further deems appropriate to note other distinct language in the Majority Opinion in determining that the three-mark split ballot claim was not a frivolous claim. The language contained in the majority opinion of the Court is the following:

> Thus federal jurisdiction hinges on whether plaintiffs have a colorable claim under §1983. (Citations omitted.)**(In other words, federal courts have jurisdiction over claims arising out of a state or local electoral dispute if, and to the extent that , the complaint limns a set of facts that bespeaks the violation of a constitutionally guaranteed right.)**
>
> **There is no doubt that the Rossello complaint alleges the violation of a constitutionally guaranteed right, and thus, presents a colorable claim under §1983 for subject matter jurisdiction purposes. The federal Constitution protects the right of all qualified citizens to vote in local elections.**

Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 15. (Emphasis supplied.)

Therefore, although abstention is favored, the merits of the complaint cannot be classified according to the movants' success in their quest before the court.[20] The above cited thought expressed in the Majority Opinion in Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 16n.29, and in the Concurrent Opinion of Circuit Judge Howard at 398 F.3d 19-20, authorizing federal courts to entertain constitutional challenges to state elections without a showing of disenfranchisement and

---

[20] Finally, although the court will of course not address the merits of the three-mark split ballots, the Court reminds that jurisdiction over said split ballot claim could have been retained by the district court pursuant to the supplemental jurisdiction statute under 28 U.S.C. §1367, as the court originally had jurisdiction over the absentee ballot matter as an enfranchisement case in violation of both state law and federal law.

contrariwise allowing the seeking a denial of suffrage in a vote dilution based on <u>Bush v. Gore</u> (citations omitted) and <u>Reynolds v. Simms</u>, 377 U.S. at 555, clearly lead the court to conclude that plaintiffs' complaint was not frivolous.

Therefore, the Court must **DENY** the claims for attorneys' fees to defendants grounded on the conclusion that the original complaint was not frivolous.  Hence, the Court deems unnecessary to address the reasonableness of the fees requested by the defendants.[21]

### 2) Plaintiffs request for attorneys' fees

In order to award attorneys' fees under §1988(b) the first inquiry to be made is whether the plaintiff is a prevailing party, then the court must determine what amount constitutes a reasonable fee award.  <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992).  The discretionary language within §1988 has been interpreted by the First Circuit as "awards in favor of prevailing civil rights plaintiffs are virtually obligatory."  <u>Diaz-Rivera v. Rivera-Rodriguez</u>, 377 F.3d 119, 124 (1st Cir. 2004).  The threshold to be met requires that plaintiff "must succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, (1983)(*quoting* <u>Nadeu v. Helgemoe</u>, 581 F.2d 275, 278-279 (1st Cir. 1978)).  In other words, "[t]he proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought".  <u>Id.</u>, 461 U.S. at 433n.8(*quoting* <u>Taylor v. Sterrett</u>, 640 F.2d 663, 669 (5th Cir. 1981).  However, "**[a] voluntary change in conduct due to the filing of the suit itself is not sufficient to confer prevailing party status**."  <u>Boston's Children First v. City of Boston</u>, 395 F.3d 10, 14 (1st Cir. 2005)(*citing* <u>Buckhannon Bd. & Care Home, Inc. v. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 600-610 (2001)(Emphasis added).  Rather the benefit accomplished by plaintiff must be a "judicially sanctioned change in the legal relationship between the parties".  <u>Buckhannon</u>, 532 U.S. at 605.

---

[21] Notwithstanding the court's determination not to address the reasonableness of the attorneys fees claimed by defendants, the Court must note several factors which render untenable some of the amounts claimed by defendants in fees as said claims are clearly contrary to the law precedent in this Circuit.  *See* <u>Coutin v. Young and Rubicam of Puerto Rico</u>, 124 F.3d 331(D.P.R. 1997); <u>Maceira v. Pagan</u>, 698 F.2d 38 (1st Cir. 1983).  Amongst the factors which are to be noted, the court refers to fees awarded to local attorneys not admitted to the Puerto Rico Federal Bar; further, the record is devoid of any analysis that attorneys' fees were awarded pursuant to those fees usually charged by attorneys which contract with the government and/or government officers in their personal capacity and which rates are capped by local regulation applicable to payment of fees in federal court; the record is also devoid of evidence showing the reasonableness of hiring out-of-town attorneys and the rates charged by said counsel *vis a vis* the local rates charged by similarly experienced attorneys; the reasonableness of the rates charged for travel time; and an examination of the hours charged avoiding duplicity.

The Magistrate Judge concluded that plaintiffs were not prevailing parties although they had obtained relief in some of their claims.[22]   The Magistrate Judge concluded that as to the recount claim, although the district court ordered to recount simultaneously with the general canvass, said remedy was granted "to protect its jurisdiction and for the safekeeping of the [three-mark split] ballots at issue".[23]   Further, the Magistrate Judge reasoned that said holding was not disturbed on appeal because plaintiffs admitted that substantial and complete relief had been obtained.  However, the court of appeals ordered the district court to dismiss said claim with prejudice once it was determined that federal intervention was unwarranted.  Moreover, the Magistrate Judge reasoned that the order issued by the district court was interlocutory in nature hence did not address the merits of plaintiff' claims.  The Magistrate Judge pointed that the court of appeals neither addressed the merits of the recount claim therefore, plaintiffs cannot assert prevailing party status entitling them to attorneys fees.

As to the absentee ballots claim, the R & R recognized that plaintiffs also asserted before the court of appeals that "complete and substantial relief" had been obtained from the SEC.  Nevertheless, the appellate court noticed that "there was still a question as to whether the SEC would honor its promise to remedy the absentee ballots problem but that said open question was not yet ripe".  Rosello-Gonzalez v. Calderon-Serra, 398 F.3d at 7n.15.  Further, the R & R concluded that the corrective action taken by the SEC lacks "sufficient imprimatur to confer prevailing party status to the plaintiffs".   Moreover, the Magistrate Judge noticed that the court had issued an order asserting jurisdiction as to the absentee ballots claim but a remedy was not provided although Chairman Gracia, testified as to the SEC's untimely mailing of the absentee ballots and his intention to provide a remedy correcting said action, albeit after suit was filed. (Notwithstanding a remedy had been required in the complaint and defendants accepted to grant a remedy several days after the hearings began.)   Finally, the Magistrate Judge concluded that the SEC's voluntary change in

---

[22] As stated previously, the plaintiffs admitted having obtained relief as to the recount claim and the absentee ballots issue.  See Rossello-Gonzalez v. Calderon-Serra, 398 F.3d at 7n. 14, 15.

[23] But the Court had also clearly stated that "... why aren't we recounting, as we recounted in 1980 [P.P.D. v. Barreto-Perez, 110 D.P.R. at 384-385]... why are we not putting [the recount procedure] in effect as we did in 1980... as this election [2004] apparently calls for?" (Referring to the stipulation of all parties contained in the Rules and Regulations for the elections).   As stated infra, the recount order was eventually entered both by the federal court and the state court.  The recount procedure and hence the election results were consequently delayed from the date originally accepted by all parties, the recount would have originally begun early in November 4-5, 2004, until after the decision of the Supreme Court ordering the SEC to recount on Saturday November 20, 2004.  (Transcript November 19, 2004, Docket No. 118, P. 33).

conduct is akin a voluntary change in the legal relationship amongst the parties absent a court order and as such, prevailing party status cannot be conferred because the merits of the claim were never addressed.

Plaintiffs counter by asserting that in fact relief was obtained in two of their claim, to wit, the absentee ballots and the recount issues, and said remedies were left undisturbed by the appeals court. Further, plaintiffs sustain that the reliefs sought were independent of whether plaintiff Rossello prevailed in the election because they never requested the remedy that plaintiff Rossello be installed as governor. Consequently, plaintiffs affirm that they had achieved prevailing party status because they obtained from the defendants some of the benefits sought in bringing the suit without the court having to provide to the issue any further consideration.

The Court deems that plaintiffs' lack prevailing party status warranting attorneys' fees because although a change in the legal relationship amongst the parties did occur resulting in plaintiffs' benefit due to a change in defendants' behavior, Gay Officers Action League v. Puerto Rico, 247 F.3d 288 293 (1st Cir. 2001), **said change resulted from defendants voluntary change in conduct**. Boston's Children First v. City of Boston, 395 F.3d at 14(Emphasis added). In other words, there cannot be an award of attorneys' fees if the defendant timely raises the white flag of peace and acquiesces to the request made in the complaint before the Court enters a judgment; as occurred in the instant case.[24] Further, because that the appellate court dismissed with prejudice the recount claim and the absentee ballot claim was dismissed without prejudice, plaintiffs' benefit was accomplished by defendants' own conduct. Hence, the change in voting relationship was not the result of a "judicially sanctioned change" which altered the "legal relationship between the parties". Plaintiffs therefore lack, as a matter of law, prevailing status notwithstanding that the lawsuit by itself created the change. Buckhannon, 532 U.S. at 605. Therefore, the Court **ADOPTS in part** the Magistrate Judge's R & R as to the plaintiffs' lack of prevailing party status and **DENIES** plaintiffs' request for attorneys' fees.

## CONCLUSION

For the reasons stated herein, the Court hereby **ADOPTS in part** the Magistrate Judge's

---

[24] Originally the SEC and its Chairman Gracia denied the requested remedy as to the absentee ballot voters alleging that plaintiffs lacked standing. *(See* Docket No. 57. P. 3-4.) Similarly, as to the recount the same was denied based on a lower court decision ignoring the previous Supreme Court of Puerto Rico mandate in the case of Barreto, 110 D.P.R. at 385. Of course, the matter became moot when the Supreme Court of Puerto Rico ordered the recount the night of November 20th, 2004.

Report and Recommendation (Docket No. 238).  Consequently the court hereby **DENIES** co-defendant Aurelio Gracia's and the SEC's *Petition for an Award of Attorneys Fees* (Docket No. 215); **DENIES** co-defendants Gerardo Cruz and Mr. Anibal Acevedo-Vila's request for attorneys' fees filed in their *Application for Attorneys Fees and Costs* (Docket No. 216).  As previously stated, the Clerk of Court is **ORDERED** to tax appropriate costs as requested by Mr. Gerardo Cruz and Mr. Anibal Acevedo-Vila at Docket No. 216. Finally, the Court hereby **GRANTS** plaintiffs' *Motion for Leave to File Motion for Attorney's Fees* (Docket No. 217) and **DENIES** plaintiffs' *Motion for Attorneys Fees* (Docket No. 218).

        **IT IS SO ORDERED.**
        In San Juan, Puerto Rico this 17th day of January 2006.

                                  **S/DANIEL R. DOMINGUEZ**
                                  **DANIEL R. DOMINGUEZ**
                                  **U.S. DISTRICT JUDGE**